JOHN H. FALCONER,
Trustee in Insolvency of JOHN W. CLARK,
vs.
JOHN W. CLARK AND DAVID GRIFFITH.

July Term, 1852.

[INSOLVENT LAWS—FRAUDULENT CONVEYANCES—EVIDENCE—PRACTICE.]

To avoid a deed under the Insolvent Acts of 1812, ch. 77, and 1816, ch. 221, it is not enough that the grantee was insolvent at the date of its execution and that the grantee knew of such insolvency; but it is indispensable that the undue preference should be given " with a view, or under an expectation at the time, of taking the benefit of the insolvent laws."

Where a bill attacks a conveyance as fraudulent under these acts, it should contain an averment that the undue preference was made with such view and expectation.

The 1st sec. of the Act of 1834, ch. 293, is local in its operation and confined to the City and County of Baltimore, and its proviso prevents its application to cases where the grantee had not notice of the insolvent condition of the grantor.

The notice required by this act to vitiate the conveyance is not a technical or constructive notice, but an actual notice derived from a knowledge of the condition of the grantor : and the plaintiff, where the answer denies it, must prove such actual notice at the date of the deed.

The 2d sec. of the Act of 1845, ch. 139, condemns transfers though made at the request or on the demand of the creditor; but allows them to stand, unless made with a view and under an expectation of taking the benefit of the insolvent laws, as required by the Acts of 1812 and 1816 : and where this intent is denied by the answer, the plaintiff must prove it.

The grantor in the deed was indebted to a partnership firm, which was indebted to G., one of the partners. G. purchased the property conveyed by the deed, and it was agreed that the purchase-money should be charged on the books of the firm to G. and credited to the grantor, which was done. HELD—

That K., another partner of the firm, was a competent witness for G. in a suit by which the validity of the deed was attacked by the creditors of the grantor.

A vendor selling in good faith, is not responsible for the goodness of his title beyond the extent of the covenants in his deed.

[The deed attacked by the proceedings in this case, was executed on the 6th of September, 1850, and the grantor, Clark, applied for the benefit of the insolvent laws on the 11th

of December of the same year, and the complainant John H. Falconer, was appointed his permanent trustee, who filed the bill in this case on the 15th of April following. The allegations of the bill and answers, as well as the facts of the case disclosed by the testimony, are all sufficiently set forth in the opinion of the Chancellor :]

THE CHANCELLOR :

The object of the bill in this case, which was filed on the 15th of April, 1851, is to vacate a conveyance executed by the defendant Clark to the defendant Griffith on the 26th of September, 1850, of certain leasehold property in the city of Baltimore, upon the double ground that it is void under the insolvent laws, and under the statute of Elizabeth.

It alleges "that at the time of the execution and delivery thereof, said Clark was largely indebted to the firm of Kramer, Mantz & Co., of said city, of which firm said Griffith was a partner at the time of said execution and delivery, and that said Clark and Griffith both knew that said Clark was insolvent;" "That said deed was executed and delivered to secure illegally to said firm the amount due to them from said Clark, and that said Clark and Griffith colluded to procure to said firm and to said Griffith an improper and unlawful preference over other creditors of said Clark, and to hinder said creditors from obtaining their rights in the matter."

The bill, it will be seen, does not allege that the deed was made "with a view or under an expectation of the grantor's being or becoming an insolvent debtor, and with intent thereby to give an undue and improper preference," which according to the construction of the Acts of 1812, ch. 77, and 1816, ch. 221, mean "with a view or under an expectation of taking the benefit of the insolvent laws," *Hickley* vs. *Farmers & Merchants' Bank*, 5 *G. & J.*, 377 ; the allegation simply being that the parties to the deed knew of Clark's insolvency, and that it was executed collusively to procure to the firm and to Griffith an improper and unlawful preference over the other creditors of the grantor. It might, therefore, well be doubted

whether looking alone to the provisions of those acts, it would be competent to the party successfully to assail this deed whatever might be the state of the proof, if exceptions had been filed to the averments of the bill. It is not enough under these laws that the grantor was insolvent at the date of the execution of the deed, and that the grantee knew of such insolvency; but it is indispensable that the undue preference should be given "with a view or under an expectation at the time of taking the benefit of the insolvent laws."

The bill in this case then not being framed to vacate the deed under the Acts of 1812 and 1816, but with a view rather to the 1st section of the Act of 1834, ch. 293, it becomes necessary to inquire whether the complainant has proved a case which entitles him to relief under the provisions of that Act? The Act declares "that when a deed, &c., is made with intent to prefer any creditor, &c., of the grantor, when such grantor shall have had no reasonable expectation of being exempted from liability, or execution, for or on account of his debts, without applying for the benefit of the insolvent laws, it shall be deemed to have been made with a view or under an expectation on the part of the grantor of being or becoming an insolvent debtor, and with intent thereby to give an undue and improper preference." But the proviso to this section, which has been adjudged to be local in its operation and confined to the city and county of Baltimore, *Cole* vs. *Albers and Runge*, 1 *Gill*, 412, declares that it shall not apply as against any person or persons claiming under the deed, &c., nor to any case where the creditor, or security taking the deed, shall appear not to have had notice of the condition of insolvency, as aforesaid, of the grantor. And it has been also adjudged, in the case referred to, "that by the true construction of the Act, the notice which is to vitiate the deed, is not a technical or constructive notice, but an actual notice derived from a knowledge of the condition of the grantor."

Assuming then that the plaintiff's title to the aid of the Court depends upon the 1st section of the Act of 1834, it is incumbent on him to prove that the defendant Griffith had

actual notice at the date of the deed of the insolvent condition of the grantor. The bill avers that Griffith and Clark both knew at that time that the latter was insolvent; but this averment is denied in the answers of both the defendants, in the most unequivocal and positive terms. That of Griffith " denies that he knew or had any reason to suspect at the time or before the execution of said deed, nor until some time thereafter, that Clark was insolvent and unable to pay his debts; but on the contrary, he avers that at and before the execution of the deed and for some time thereafter, he believed he was able to pay his debts and have a considerable surplus of property." And in opposition to this flat denial there is not, so far as Griffith is concerned, any evidence whatever. Circumstances have been relied upon, to be sure, in the argument to prove that some one of the members of the firm of Kramer, Mantz & Co., knew that Clark was in embarrassed circumstances; but there is nothing to show, or from which it can be fairly inferred against the positive denials of the answers, that Griffith was that person. The bill does not rely upon the knowledge of the firm, but upon the knowledge of Griffith. It charges such knowledge and collusion between him and Clark to procure the preference to the firm and to Griffith, and being met by the positive contradiction of the answer, relief can only be granted upon proof sufficient according to the law of the Court to overthrow the answer.

Looking to the pleadings and evidence in the case the plaintiff appears to me to have no ground to stand upon, if his title to relief depends upon the 1st section of the Act of 1834, ch. 293. But it is supposed he may call to his aid the Act of 1845, ch. 139. The 1st section of that Act, it is very clear, does not extend to the city of Baltimore; and I incline to think the 2d section is equally inapplicable. But suppose it be otherwise, the complainant's case is not improved by it. The 2d section of the Act does not alter the provisions of the Acts of 1812, ch. 77, sec. 1, and 1816, ch. 221, sec. 6, except that it declares the preference shall not be saved because made " at the earnest request, &c., of the creditor;" a provision being

probably introduced in consequence of the decision of the Court of Appeals in the case of *Crawford and Sellman* vs. *Taylor*, 6 *G. & J.*, 323, in which it was held that though the transfer to the favored creditor may be made with a view and under an expectation of taking the benefit of the insolvent laws, it will not be avoided if it was made upon the application of the creditor, because it could not then be regarded as a voluntary act.

But though the Act of 1845 condemns the transfer, though made at the request or on the demand of the creditor, it allows it to stand, unless made with a view and under an expectation of being and becoming an insolvent debtor and with intent to prefer, &c., that is, with a view and under an expectation of taking the benefit of the insolvent law, as required by the Acts of 1812 and 1816, and therefore is less stringent than the Act of 1834, which avoids the deed or transfer if the grantor had no reasonable ground for believing that he could be exempt from execution or liability for his debts without having recourse to the insolvent laws. In other words, that in the city and county of Baltimore the absence of such reasonable ground for believing he could be exempt from execution or liability for his debts, would avoid the transfer of the debtor as though it was made with the direct view of taking the benefit of the insolvent laws, provided the creditor knew of the insolvent condition of the debtor.

Conceding then that the plaintiff may call to his aid the Act of 1845, he must prove that when Clark executed the deed of September, 1850, he intended to take the benefit of the insolvent laws. Now, in the first place, he has not charged it in his bill: and if he had, the answer of Clark denies expressly his insolvency at the time of the execution of the conveyance to Griffith, and attributes it to causes which occurred subsequently. There is to be sure evidence that Clark was pressed for money at or about that time to meet his engagements; but it is altogether insufficient in my judgment to prove that he intended to take the benefit of the insolvent laws, and that with that view and under that expectation, and with intent to prefer Griffith, or the firm of which Griffith was a member, he

made the deed. The charge of collusion with Griffith to give him or his firm an unlawful preference, is expressly denied.

I should, therefore, hold that the plaintiff had failed in his case if Griffith had been a creditor of Clark, and the deed had been executed to secure the debt. But this is not the character of the transaction at all. The answers of both the defendants charge that the property was *sold* by Clark to Griffith; and the deposition of Samuel Kramer, one of the firm of Kramer, Mantz & Company, taken under the commission, fully sustains the answers. It is not material to inquire into the validity of the original agreement proved by Kramer, that when the firm trusted Clark to the extent to which they gave him credit it was upon his promise to let them have the house; because if the subsequent agreement with Griffith to sell it to him, and the sale actually made to him, was *bona fide*, as both defendants swear was the case, and as Kramer proves, the character of the original agreement between Clark and the firm is of no importance. Certainly the *bona fides* of the sale and conveyance to Griffith cannot be impeached because of the mode in which the purchase-money was paid. Clark was indebted to the firm and the firm was indebted to Griffith, and upon receiving the conveyance it was agreed that the purchase-money, $1300, should be charged to Griffith upon the books of the firm and credited to Clark, and this was done and so stands to the present time. The money of Griffith, therefore, in the hands of the firm, where there is no pretence it was not perfectly safe, was applied to the payment of Clark's indebtedness. It was, therefore, with his consent paid to his use, and is precisely the same thing in legal contemplation as if it had been paid directly to him. There is some discrepancy about amounts, but this I think is explained by the condition of the books, and does not affect the fairness of the transaction. There can be no doubt that Clark has received the whole consideration for the property, and no effort has been made to prove that it was not the full value of it.

But it is said that Kramer is not a competent witness, because, as the argument supposes, if Griffith loses the property

he will have a right to go against the firm for the money he paid for it. That is, that the charge to his account, made with his consent in September, 1850, when he received the conveyance, must be struck out, and consequently that Kramer is interested in supporting the conveyance. It is not said that there was any agreement to this effect, and I can see no ground upon which the law would imply one. As between Clark and Griffith it is very clear, that in the absence of fraud or misrepresentation there could be no recovery against the former, even on a failure of title, the rule being that a vendor selling in good faith is not responsible for the goodness of his title beyond the extent of the covenants in his deed. *Abbott* vs. *Allen*, 2 *Johns. Ch. Rep.*, 523; *Gouverneur* vs. *Elmendorf*, 5 *ibid.*, 79. In this deed there are no covenants, and there is no pretence that any fraud or misrepresentation was practised by Clark upon Griffith. If there is any fraud in the case (of which I see no evidence) it is upon the creditors of Clark, in which Griffith was a participant, and for that surely he can have no remedy.

But if there could be no recovery against Clark on a failure of title, upon what principle can Griffith be permitted to have recourse to the firm of Kramer, Mantz & Company for his money, if the deed to him is annulled? They certainly have not engaged to indemnify, if the title fails, and he can have no ground for going against them, except that they have together perpetrated a fraud upon the creditors of Clark, he, Griffith, being a most active party in its perpetration. This would be a strange ground for applying to a court of law or equity for relief. Kramer is no party to the cause; he is not liable for costs. The decree could not be used in evidence against him, and he could not be proceeded against by Griffith in the event of the failure of the latter, to sustain his deed, except upon grounds which would effectually close the door of the Court in his face. I regard him, therefore, as a competent witness, and being competent, he makes out a case which shows a *bona fide* purchase by Griffith, of the property in question.

I shall, therefore, dismiss the bill, but in consideration of the character in which the plaintiff sues, and thinking that

under the circumstances, he might reasonably have regarded it as his duty to bring the suit, I will not subject him to costs.

COLEMAN YELLOTT, for Complainant.
ST. GEORGE W. TEACKLE, for Defendants.

[An appeal was taken from the decree of the Chancellor, dismissing the bill in accordance with the above opinion, which is still pending.]