## WALTER·R. KENDALL, ET AL. *v.* R. HYNSON ROGERS

[No. 31, January Term, 1943.]

*Decided April 7, 1943.*

The cause was argued before SLOAN, DELAPLAINE, MARBURY, GRASON, and MELVIN, JJ.

*Charles P. Coady, Jr.,* with whom were *Coady & Farley* on the brief, for the appellants.

*James C. Burch* and *L. Wethered Barroll* for the appellee.

GRASON, J., delivered the opinion of the Court.

This case presents to this court for review the correctness of the lower court's ruling in sustaining a demurrer to the appellants' declaration, upon which judgment was entered for the appellee and an appeal therefrom to this court entered by the appellants.

The facts set up in the declaration may be summarized as follows: Kendall owned a farm in Kent County, which he acquired from Coleman and others in 1920. On December 4, 1926, Kendall and wife granted and conveyed this farm to MacCubbin and wife and in the deed conveying the same covenanted "that he will warrant specially the property hereby granted and conveyed." On June 4, 1930, MacCubbin and wife mortgaged the said farm to Kendall and wife for $4,330 with interest at 6 per cent. per annum, payable in three years from the date of the mortgage. That sometime before June 1, 1939, MacCubbin and wife contracted to sell this farm to Cross, who declined to take title and complete the

contract on the grounds that the title was defective, and this action by Cross was taken because of defect in the title before Kendall acquired the farm in 1920 and neither the said Kendall, nor his wife, nor anyone claiming by, through or under them, were in any way responsible either by act or deed, for the existence of those things which were alleged to have created such defect in the title to said farm.

That MacCubbin and wife retained the defendant, an attorney at law, to represent them to clear up the alleged defect in the title to said farm; that the defendant approached the plaintiffs and told them that the title to said tract of land was defective, and "represented to them that it was their duty and legal responsibility to see that the title to said farm was made good in Mac-Cubbin and wife." That about June 1, 1939, the plaintiffs were advised by the defendant "to attend his office for the purpose of releasing said mortgage and consummating the sale of said farm by MacCubbin and wife to Cross; that they did attend at the office of said attorney on said date for that purpose. That the defendant had been acting as attorney for MacCubbin and wife and was acting for them at said settlement, and the plaintiffs were not represented by counsel but believed and had a right to believe from all the circumstances as herein set out, that the said R. Hynson Rogers was acting also for them in the protection of their rights"; that the plaintiffs relied on the statements of the said R. Hynson Rogers "that it was their legal obligation to pay for the curing of the alleged defect in said title and relying upon said statement that such was their legal obligation, they delivered a full release of said mortgage and received for the same $1,053.93, although there was due them at that time, under the terms of said mortgage $4,330.00, with interest from December 4, 1938"; "that there was deducted from the amount due under said mortgage $3,276.07 for the purpose of curing said alleged defect in title." There is then set out a statement

of the transaction which purports to be expenses incurred by R. Hynson Rogers, attorney (the defendant) in clearing title to Drum Point Farm, which contains the following: "Attorneys fee covering work December 15, 1938 to June 1, 1939 on Drum Point title $200.00." It is then alleged "that said item of $200.00 as is stated on said statement, was deducted from the amount of said mortgage to plaintiffs, as a fee to said Rogers (defendant) for acting as attorney for plaintiffs in clearing title to said tract of land." It is then charged: "since the defendant had done the work to clear title to said land, as is shown by said signed statement, and there had been deducted from the plaintiffs' funds a fee of $200.00 for the defendant, as is also shown by said signed statement, the plaintiffs had a right to and did assume that the said R. Hynson Rogers was looking out for their rights, especially since they were not otherwise represented in said matter; and believing this, they relied upon the statements and representations of the defendant that they were legally obligated to make good for the said MacCubbin and wife the title to said lot of ground and were legally obligated to pay for the curing of said defects and, therefore, accepted said check of $1,053.93 in full for the release of said mortgage and allowed said deduction to be made."

It is then charged that the defect in the title to the said farm was not brought about through any acts of the plaintiffs or either of them, or by any person or persons claiming by, through or under them and that they were under no legal liability to pay any money to cure said alleged defect or to pay out to MacCubbin and his wife any moneys which they might have been called upon or required to pay out for any such defect or to allow MacCubbin and his wife, or their attorney, to deduct from the amount due to them under said mortgage any moneys for the purpose of curing said alleged defect, because their covenant as to warranty was "special" and only in that they did "warrant specially the property hereby

granted and conveyed." It is then charged that although plaintiffs do not wish to cast the slightest reflection upon the good intention of the said R. Hynson Rogers, but on the contrary believe he acted in the utmost good faith, they, nevertheless, allege that the advice given by the said R. Hynson Rogers to the plaintiffs, as their attorney, was incorrect, improper, unskillful and negligent; for that the plaintiffs having had the right to rely on and having relied on said R. Hynson Rogers, as an attorney at law, and on the advice given to them as aforesaid when they delivered said absolute release of mortgage and permitted the deductions from the amount due thereunder, which were paid out in curing the alleged defect in said title, suffer damages in the loss of said deductions and in interest thereon. It is further alleged that said release was given as a direct result of said advice and but for the giving of the same they would have suffered no damages but would have been able to collect under the terms of said mortgage either out of the land or from the mortgagors the full amount due thereon. The plaintiffs claim $5,000 damages.

It is elementary that a demurrer admits only matters well pleaded, and the question arises: "Does this declaration, reasonably and fairly interpreted, disclose upon its face, in substance, a sufficient legal cause of action, if all of its allegations of fact be conceded to be true?" *Poe's Pleading and Practice,* Vol. 1, Sec. 586.

Before taking up the facts well pleaded in the declaration it can be said:

"It is now well settled by many decisions of courts of higher authority, both of England and of this country, that every client employing an attorney has a right to the exercise, on the part of the attorney, of ordinary care and diligence in the execution of the business entrusted to him and to a fair average degree of professional skill and knowledge; and if the attorney has not as much of these qualities as he ought to possess, and which, by holding himself out for employment he im-

pliedly represents himself as possessing, or if, having them, he has neglected to employ them, the law makes him responsible for the loss or damage which has accrued to his client from their deficiency or failure of application."

"A client who has employed an attorney has a right to his diligence, his knowledge, and his skill; and whether he had not so much of these qualities as he was bound to have, or having them, neglected to employ them, the law properly makes him liable for the loss which has accrued to his employer." *Cochrane v. Little,* 71 Md. 323, 18 A. 698; *Watson v. Calvert Bldg. Ass'n,* 91 Md. 25, 45 A. 879; *Caltrider v. Weant,* 147 Md. 338, 339, 128 A. 72; 5 *Am. Jur., Attorney at Law,* Sec. 124.

It is equally well settled that a covenant of special warranty in a deed casts upon the grantor the obligation of protecting the grantee against any act impairing the title during the holding of the property by the grantor and under such a covenant the grantor would not be liable for acts done by his predecessors that impaired or rendered defective title to property conveyed by him. Code, 1939, Art. 21, Sec. 92; *Falconer v. Clark,* 3 Md. Ch. 151; *Falconer v. Clark,* 7 Md. 177; *Morris v. Harris,* 9 Gill 19.

From these authorities it appears where an attorney is employed for the purpose of advising his client regarding his responsibility under a covenant of special warranty and he counsels the client that his obligation under such a covenant is to defend title against all the world, which is relied on by the client, it could not be said that the attorney, in giving such advice, exhibited "a fair average degree of professional skill and knowledge" and would be liable in an action on the case for resulting damages.

In the case of *Maryland Casualty Co. v. Price,* 231 F. 397, at page 401, *Ann. Cas.* 1917B, 50, it is stated: "In a suit against an attorney for negligence, the plaintiff must prove three things in order to recover: (1) The attorney's employment; (2) his neglect of a reasonable

duty; and (3) that such negligence resulted in and was the proximate cause of loss to the client."

The question for decision is: Was the defendant employed to represent the plaintiffs as their attorney in the matter?

Turning to the declaration, it is stated therein that MacCubbin and wife "retained the defendant, an attorney at law, to clear the defect in the title to said farm." That the defendant, that is, the attorney for MacCubbin and wife, told plaintiffs the title to said tract of land was defective and represented to them that it was their duty to see that the title to the farm was made good for his clients; that the defendant, apparently acting for his clients, MacCubbin and wife, told plaintiffs to come to his office and they came to his office. Up to that time the plaintiffs charge that the defendant was acting as attorney for MacCubbin and wife and was acting for them at the settlement, and at the settlement, they charge that they relied on the statement of the defendant that it was their duty to pay for the curing of the alleged defect in title and that they assigned the mortgage that they held on this farm, the title to which was defective, and with $3,000 of the proceeds received as a consideration for said assignment, paid to the heirs of William R. Glenn as consideration for a deed from said heirs to MacCubbin, which apparently rendered the title good.

This declaration expressly avers that Rogers was not representing the plaintiffs at the time of the settlement. The day following the settlement the plaintiffs procured from the defendant a settlement sheet which showed a charge of $200 made by the defendant for work done on the title to the property involved, which was paid for out of the money belonging to the plaintiffs. It is contended that this charge creates the relationship of client and attorney and that such relationship reverts to the time that the defendant told the plaintiffs it was their duty to correct the title, even though it is admitted that the plaintiffs knew that the defendant was representing

MacCubbin and wife. No charge of fraud is made, but on the contrary it is expressly disclaimed, for it is averred that the defendant acted in good faith.

So that the contention is narrowed to a case where an attorney representing owners of a farm, finds the title bad, and states, as the attorney for his clients, to his clients grantors, in good faith, that it is their duty to correct the title (which advice is incorrect, but nevertheless acted upon), and that thereafter a charge is made against the grantors for work done to correct the title, that the attorney is liable for negligence.

It is not directly charged that the plaintiffs employed the defendant but it is sought to supply this requisite by inference to be drawn from the facts.

"The attorney is liable for his negligence in certifying to a title to his immediate employer only, and not to the latter's assigns or any third person, between whom and the attorney there is no privity." *Shearman and Redfield on Negligence,* Revised Edition, 3d Vol., page 1485.

We are of opinion that the facts set out in this declaration are not sufficient in law to establish the relationship of client and attorney between the plaintiffs and defendant in this case.

It is apparent from the facts set out in the declaration that the title to this farm held by MacCubbin and wife, on which the plaintiffs were the holders of a mortgage, was bad. At the time the advice was given the title to this farm might well have been deemed to be precarious and the mortgage which the plaintiffs held thereon rested upon the same uncertain title. That the defect was serious, is evidenced by the payment of $3,000 to the heirs of Glenn for a deed for their interest in the property. All of the work done in straightening this title was performed by the defendant and we think, from the allegations in the narr, it is a fair inference that the plaintiffs expected the defendant to do this work, which was beneficial to them as mortgagees, and that his position was analogous to an attorney who searches title to

614

a property for mortgage and is paid by the mortgagor for his services.

For these reasons we think that at the time this advice was given the defendant was not the attorney for the plaintiffs and hence the action of the lower court was correct in sustaining the demurrer.

*Judgment below affirmed, with costs.*