Geraldeen GOLDBERGER, Georgean Swartz and Marilyn J. Hellman, Beneficiaries of the Estate of Martin J. Hellman, Appellants,

v.

KAPLAN, STRANGIS AND KAPLAN, P.A., et al., Leo Wolk, Personal Representative of the Estate of Martin J. Hellman, Respondents.

No. C2–95–294.

Court of Appeals of Minnesota.

Aug. 1, 1995.

Review Denied Sept. 28, 1995.

---

Edward J. Schwartzbauer, Edina, for appellants.

Timothy D. Kelly, Michael Berens, Erin K. Fogarty, Kelly & Berens, P.A., Minneapolis, for Respondents Kaplan, Strangis and Kaplan, P.A.

Joseph W. Anthony, Paul M. Floyd, Fruth & Anthony, P.A., Minneapolis, for respondent Leo Wolk.

Considered and decided by RANDALL, P.J., and SCHUMACHER and DAVIES, JJ.

## OPINION

DAVIES, Judge.

Appellants, beneficiaries under a will, brought suit against the personal representative of the estate and the personal representative's attorneys. The trial court, in granting summary judgment, held that appellants' claims were barred by releases they had signed as part of an earlier settlement and that appellants lacked standing to sue the personal representative's attorneys. We affirm.

## FACTS

Appellants are three of the beneficiaries under the will of Martin Hellman, their father. Respondent Leo Wolk, as personal representative of Hellman's estate, hired respondents Samuel Kaplan and Margery Otto of respondent Kaplan, Strangis & Kaplan, P.A. (collectively the attorneys), to assist him in administering the estate.

In February 1990, Wolk filed with the probate court estate accountings and a petition for order of complete settlement and decree of distribution. Appellants filed objections to both personal representative fees and attorney fees as proposed in these fil-

ings. In settling this fee dispute, appellants each signed a general release in August 1990 providing that appellants

hereby release, acquit and forever discharge LEO WOLK and his former and present attorneys * * * *from all claims,* demands, debts, suits, causes of action, liens, judgments, and damages of every kind, whether or not presently known or suspected, asserted or unasserted, liquidated or unliquidated, fixed or contingent, or direct or indirect, to the date hereof, by reason of that certain probate proceeding entitled In Re: Estate of Martin J. Hellman pending in the Hennepin County District Court.

IT IS HEREBY SPECIFICALLY UNDERSTOOD AND AGREED that this General Release is in full, final and complete compromise, settlement and *satisfaction of all claims* possessed by [appellants], to the date hereof.

(Emphasis added.)

■■■■ Appellants filed the present action against Wolk and the attorneys in August 1993. The complaint alleges professional malpractice against the attorneys and breach of fiduciary duty and negligent administration of the estate against both Wolk and the attorneys. The trial court granted Wolk's and the attorneys' motions for summary judgment. The trial court dismissed the negligent administration and breach of fiduciary duty claims on the grounds that they were barred by the August 1990 releases. The trial court dismissed the professional malpractice claim against the attorneys on the additional ground that the beneficiaries of an estate lack standing to sue the personal representative's attorneys.[1]

---

1. The trial court also dismissed on their merits the claims against the personal representative arising *after* the release. On appeal, appellants have raised no argument relating to the dismissal of the post–1990 claims. *See Lener v. St. Paul Fire & Marine Ins. Co.,* 263 N.W.2d 389, 390 (Minn.1978) (claims not addressed in appellant's brief are deemed waived on appeal).

There was some discussion at oral argument regarding the res judicata or collateral estoppel effect the summary judgment might have on the closing of the estate.

We anticipate that this summary judgment will have only a limited effect on the probate proceedings. Both res judicata and collateral estoppel require a final judgment on the merits. *Myers Through Myers v. Price,* 463 N.W.2d 773, 776 (Minn.App.1990), *pet. for rev. denied* (Minn. Feb. 4, 1991) (res judicata); *Parker v. MVBA Harvestore Systems,* 491 N.W.2d 904, 906 (Minn. App.1992) (collateral estoppel).

Dismissal for lack of standing is not a judgment on the merits. *Sundberg v. Abbott,* 423 N.W.2d 686, 688 (Minn.App.1988), *pet. for rev.*

### ISSUES

I. Is there a genuine issue of material fact regarding the scope of the August 1990 releases?

II. Do the beneficiaries of an estate have standing to sue the personal representative's attorneys for professional malpractice?

### ANALYSIS

■ On appeal from summary judgment, we must determine whether there are any genuine issues of material fact and whether the trial court erred in its application of the law. *Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988).

### I. Scope Of The Releases

■ Appellants argue that a genuine issue of material fact exists as to whether the August 1990 general releases "from all claims" were intended to cover the negligent administration and breach of fiduciary duty claims. A valid release is a defense to any action on a claim released. *Sorensen v. Coast-to-Coast Stores (Central Org.), Inc.*, 353 N.W.2d 666, 669 (Minn.App.1984), *pet. for rev. denied* (Minn. Nov. 7, 1984). Whether a release was intended to cover an unknown claim becomes a question of law when the evidence of the release's finality is conclusive. *Schmidt v. Smith*, 299 Minn. 103, 109, 216 N.W.2d 669, 672–73 (1974). Appellants assert that, notwithstanding the plain language of the August 1990 releases, they were only intended to settle the *fee* dispute raised by the February 1990 accountings. Appellants point to the recitals preceding the stipulation, which set forth the proposed fees and appellants' objection to them. Appellants also note that the body of the stipulation, which precedes the releases, deals main-

ly with the issue of fees. They also rely on a letter from one of the attorneys that states:

> On behalf of [the personal representative and the attorneys], I thank each of you for signing the Stipulation settling the fee disputes in this estate.

Appellants also cite their own testimony that they did not believe they were settling anything other than the fee dispute.

■ First, appellants' testimony about what they believed is not helpful. Unilateral mistake as to the scope of a release will not avoid its plain language; appellants must come forward with evidence that there was a *mutual* mistake regarding the intended scope of the releases or that respondents induced the mistake in some way. *Sorensen*, 353 N.W.2d at 670.

As for the content of the stipulation and the above letter, since appellants were objecting only to the proposed fees, it is not surprising that these documents both focused on the fee dispute. But the mere fact that the stipulation focuses mainly on the fee dispute does not prove that the settlement is limited to that issue. After all, the stipulation does not deal exclusively with the issue of fees. The last four pages of the stipulation deal with immediate distributions to be made from the estate, execution of various documents relating to administration of the estate and distribution of assets, payments to be made by appellants to another beneficiary of the estate, and distribution of the remaining assets of the estate.

■ Absent some substantive evidence to the contrary, it is impossible in the face of these documents to infer that Wolk and the attorneys intended to settle only the fee dispute, leaving appellants free to raise other objections in the future. We hold that the

---

denied (Minn. June 29, 1988). Thus, dismissal of the malpractice claim should not have a preclusive effect.

A judgment based on a settlement agreement is a final judgment on the merits, but only with respect to those issues and claims actually settled. *In re Estate of Bush*, 302 Minn. 188, 205, 224 N.W.2d 489, 500 (1974), *cert. denied*, 420 U.S. 1008, 95 S.Ct. 1454, 43 L.Ed.2d 768 (1975). The language of the releases here only applies to claims against Wolk and the attorneys; it may not preclude appellants from raising in the pro-

bate proceedings some issues underlying the negligent administration and breach of fiduciary duty claims.

Finally, in dismissing the post–1990 negligent administration and breach of fiduciary duty claims, the trial court explicitly stated that the distribution issues underlying many of these claims were not resolved, but would be resolved when the estate was closed. *See* March 8, 1994, Order Granting Partial Summary Judgment at 18–19; October 13, 1994, Order Granting Partial Summary Judgment at 9–11, 13–14.

evidence as to finality is conclusive, leaving no issue of material fact. We affirm summary judgment on the negligent administration and breach of fiduciary duty claims; they are barred by the August 1990 releases.[2]

## II. Standing to Sue Attorneys

 The trial court held that appellants, as beneficiaries of the estate, lacked standing to assert a claim for professional malpractice against the personal representative's attorneys. We agree.

 Appellants concede they have no attorney-client relationship with the attorneys here. Generally, an attorney is liable for professional malpractice "only to a person with whom the attorney has an attorney-client relationship." *Marker v. Greenberg*, 313 N.W.2d 4, 5 (Minn.1981). The exception is that a nonclient may maintain a cause of action against an attorney for professional malpractice as an intended third-party beneficiary in those limited situations where the client's sole purpose in retaining the attorney is to benefit the nonclient directly, and the attorney's negligence instead causes the nonclient to suffer a loss. *Admiral Merchants Motor Freight, Inc. v. O'Connor & Hannan*, 494 N.W.2d 261, 266 (Minn.1992) (citing *Marker*, 313 N.W.2d at 5). Determining whether an attorney owes a duty to a nonclient involves a balancing of factors, including: (1) the extent to which the transaction was intended to affect the nonclient; (2) the foreseeability of harm to the nonclient; (3) the degree of certainty that the nonclient suffered injury; (4) the closeness of the connection between the attorney's conduct and the injury; (5) the policy of preventing future harm; and (6) whether recognition of liability under the circumstances would impose an undue burden on the profession. *Lucas v. Hamm*, 56 Cal.2d 583, 15 Cal.Rptr. 821, 823–24, 364 P.2d 685, 687–88 (1961), *cert. denied*, 368 U.S. 987, 82 S.Ct. 603, 7 L.Ed.2d 525 (1962).

Appellants contend that the third-party beneficiary test and the multifactor *Lucas* test are two distinct bases of liability. Neither *Marker* nor *Admiral Merchants* suggest that the third-party beneficiary analysis and the *Lucas* factors are alternative theories of liability. Both cases, instead, state that the nonclient must be a direct, intended beneficiary of the attorney's services. The cases then state that the *Lucas* factors must be considered in determining the attorney's duty to the nonclient. *Admiral Merchants*, 494 N.W.2d at 266, *Marker*, 313 N.W.2d at 5. It seems, then, that the supreme court intended the *Lucas* factors as an aid in determining whether the nonclient is a third-party beneficiary and that is how we have analyzed this case.

Here, appellants are not the direct, intended beneficiaries of the personal representative's attorneys' services. As permitted by

2. Both parties have brought motions to supplement the record on appeal with evidence that was not presented to the district court. Generally, an appellate court cannot consider evidence that was not presented to the district court. *Thiele v. Stich*, 425 N.W.2d 580, 582–83 (Minn. 1988). But in order to sustain the judgment of a district court, an appellate court may permit the record on appeal to be supplemented by documentary evidence of a conclusive nature. *Plowman v. Copeland, Buhl & Co.*, 261 N.W.2d 581, 583 (Minn.1977).

In opposing summary judgment, appellants argued in district court that the releases were invalid because Wolk and the attorneys failed to inform them that the IRS was auditing the estate's income tax return and that the audit would substantially delay the closing of the estate. In upholding the validity of the releases, the district court held that the evidence demonstrated that appellants knew about the audit at the time they signed the releases. After judgment was entered, a letter to appellants from their former attorney was discovered. This newly discovered letter conclusively demonstrates that prior to signing the releases, appellants knew about a potential delay in closing the estate. Respondent's motion to supplement the record on appeal with this newly discovered letter is granted for the limited purpose of confirming the basis for the district court's conclusion that appellants were aware of a likely delay in closing at the time they signed the releases.

Appellants, in turn, seek to introduce numerous letters that they claim demonstrate that the releases were only intended to cover the fee dispute. The documents are far from conclusive; at best, they are evidence giving marginal support to appellants' position. Moreover, it is not appropriate to supplement the record on appeal with evidence to contradict, rather than to sustain, the district court's judgment. *Id.* Appellants' motion is denied.

statute, the personal representative hired the attorneys to assist and advise him in fulfilling his fiduciary duty to manage the estate in accordance with the terms of the will and the law and "consistent with the best interests of the estate." Minn.Stat. §§ 524.3–703(a), 524.3–715(21) (1994). The attorneys' services, therefore, must be directed towards serving the best interests of the *estate,* and, thus, all beneficiaries.

If any "person" is a third-party beneficiary of the attorneys' services, it is the estate itself; at best, individual beneficiaries of the estate are only "incidental beneficiaries" of the attorneys' services. *Goldberg v. Frye,* 217 Cal.App.3d 1258, 1268–69, 266 Cal.Rptr. 483 (1990) (beneficiaries of estate were only "incidental beneficiaries" of representative's attorneys and could not sue them); *see also Spinner v. Nutt,* 417 Mass. 549, 631 N.E.2d 542, 546 (1994) (beneficiaries of trust could not sue trustees' attorneys because they were only "incidental beneficiaries" of attorneys' services).

Moreover, an estate beneficiary's interests may not necessarily coincide with those of the estate. Until an estate is closed, it is uncertain whether any attorney malpractice actually injures a beneficiary.

Having concluded that appellants are merely incidental beneficiaries, we now address appellants' contention that the most important consideration here is the policy stated in *Lucas* of preventing future harm. Appellants maintain that a personal representative who is not injured by malpractice has no incentive to bring suit and that if an injured estate beneficiary cannot bring suit against the representative's attorneys, no one will.

■ We disagree. If a personal representative breaches his fiduciary duty of acting in the estate's best interests, the beneficiaries may hold the representative responsible. Minn.Stat. §§ 524.3–703(a), 524.3–712 (1994). As the Washington Supreme Court has recently noted, if the personal represen-

tative's liability was caused by following an attorney's advice, that attorney is not "shielded" from a malpractice suit.

If an estate attorney negligently advises a personal representative, the attorney may be liable *to the personal representative* for any legal malpractice.

*Trask v. Butler,* 123 Wash.2d 835, 872 P.2d 1080, (1994) (emphasis added). Thus, contrary to appellants' assertion, the personal representative would indeed have an incentive to bring suit against the attorneys for any alleged malpractice.

Finally, we address the sixth *Lucas* factor concern with the burden on the profession that granting standing directly to the beneficiaries would create.[3] Numerous cases from other jurisdictions have recognized that allowing a beneficiary to sue the personal representative's attorneys could subject the attorneys to an impermissible conflict of interest whenever the interests of the personal representative, acting on behalf of the estate, conflict with the interests of the suing beneficiary. *E.g., Goldberg,* 217 Cal.App.3d at 1269, 266 Cal.Rptr. 483; *Hopkins v. Akins,* 637 A.2d 424, 428 (D.C.App.1993); *Spinner,* 631 N.E.2d at 544–45; *Trask,* 872 P.2d at 1085. It is *the potential* for conflict that makes direct suit by the beneficiary unacceptable; the fact that the interests of the personal representative and the beneficiary may be aligned in a particular case does not render the suit acceptable. *Spinner,* 631 N.E.2d at 545.

We hold, therefore, that the estate beneficiaries lack standing to sue the personal representative's attorneys because the attorneys were not hired for their direct benefit, other procedures are available to protect the beneficiaries' interests from malpractice, and the potential for conflict of interest would unduly burden the legal profession.

## DECISION

Appellants' negligent administration and breach of fiduciary duty claims are barred by

---

**3.** Appellants describe the sixth *Lucas* factor as "previously unknown." Admittedly, our supreme court did not explicitly mention the burden on the profession when discussing *Lucas* in either *Marker* or *Admiral Merchants.* But we do not interpret this silence to mean that we are prohibited from considering this factor. The burden on the profession is listed in *Lucas* itself as one of the factors to be considered. 364 P.2d at 688.

the August 1990 releases. Appellants lack standing as estate beneficiaries to assert a malpractice claim against the personal representative's attorneys.

**Affirmed.**