695 A.2d 603

Kimberly Ann FERGUSON, et al.,

v.

Steven J. CRAMER, et al.

No. 1316, Sept. Term, 1996.

Court of Special Appeals of Maryland.

June 26, 1997.

---

Christopher M. Johns, Germantown, for Appellants.

Stephan Y. Brennan (Kathleen Howard Meredith and Lliff & Meredith, P.C., on the brief), Baltimore, for appellee, Cramer.

Charles Martinez (Ronald Bratt and Eccleston & Wolf, on the brief), Baltimore, for other appellees.

Argued before DAVIS and HOLLANDER, JJ., and ROBERT F. SWEENEY, J. (Retired, Specially Assigned).

DAVIS, Judge.

By order dated July 8, 1996, the Circuit Court for Anne Arundel County granted the motion to dismiss filed pursuant to MD. RULE 2–322(b) by appellees Steven J. Cramer, Esq., Thomas G. Bodie, Esq., John J. Nagle, III, Esq., Thomas J. Dolina, Esq., Power & Mosner, P.A., and Bodie, Nagle, Dolina, Smith & Hobbs, P.A. The court's order dismissed the complaint brought by appellants Kimberly Ann Ferguson, Carolyn Dawn Warner, Cheryl Rene Isensee, and Dennis William Eckes against appellees for legal malpractice. Appellants noted a timely appeal on August 7, 1996, and present the following questions for our review, which we summarize and restate below:

I. Do the beneficiaries of an estate have standing to sue the personal representative's attorney? [1]

II. Did the trial court err when it dismissed appellant's complaint based on its conclusion that appellants do not have standing to sue appellees for legal malpractice?

## FACTS

The instant case comes to us from the trial court's grant of a motion to dismiss and, as such, the relevant facts are those facts alleged in appellants' complaint and any exhibits attached thereto. The complaint alleges that appellants are all heirs of the estate of Dennis Webster Eckes (decedent or Mr. Eckes) who died on April 15, 1991. In accordance with the terms of the will, Paula Eckes (Ms. Eckes) was designated as personal representative of decedent's estate. On April 24, 1991, Ms. Eckes "employed" appellee Steven Cramer "to represent her in handling and administering the estate" of Mr. Eckes. The parties entered into a Client Representation Agreement (Agreement) naming appellee Cramer as the attor-

---

1. The issue presented herein is the subject of this Court's per curiam, unreported opinion in *Noble v. Bruce,* No. 1867, Sept. Term, 1995 111 Md.App. 735 (filed October 15, 1996, *cert. granted,* 344 Md. 719, 690 A.2d 525 (1997)).

ney and Ms. Eckes as "the client."[2]   The Agreement is attached to the complaint as an exhibit.   The parties entered the Agreement "for the purpose of representation and all appropriate legal action by the law firm for handling estate [sic] of Dennis Eckes."   The fee was to be set by the court, and Ms. Eckes agreed to "pay all reasonable and necessary costs arising during the handling of this claim."

Appellants' complaint also alleges that they, "as the only heirs of the Estate of Dennis Webster Eckes, were specifically intended to be the beneficiaries of Cramer's service as attorney for the estate of [decedent]."   Appellants allege that appellee Cramer had a duty to Ms. Eckes, as personal representative of the estate, to assist her in carrying out her duties, and a duty "to exercise that degree of care and diligence in pursing the administration of the Estate of Dennis Webster Eckes as used by attorneys engaged in the practice of law." According to appellants' complaint, when appellee Cramer failed adequately to advise Ms. Eckes on her duties to obtain and file estate inventories, appraisals, and accountings, he "breached the duty owed to [appellants] as beneficiaries of the Estate and has caused [appellants] to suffer long term economic loss as well as economic loss to the Estate."

Appellants also contend in their complaint that appellee Cramer was negligent in providing legal representation to Ms. Eckes with regard to the estate's claims against Edgewater Publishing (Edgewater) and Dr. James Beckett, two separate parties that decedent had agreements with relating to the publication of his books and sports memorabilia.   Appellants alleged that the mishandling of these estate assets resulted in economic loss to the estate.   Moreover, appellants complain that appellee Cramer's negligence caused them to suffer emo-

---

2.  Appellee Cramer was an associate with appellee Power & Mosner, P.A.   On July 26, 1993, Power & Mosner, P.A. changed its corporate name to Bodie, Nagle, Dolina, Smith & Hobbs, P.A.   Appellants contend that the principals, appellees Bodie, Nagle, and Dolina, individually, and appellee law firms "had an obligation and duty to adequately supervise their employee [Cramer] . . . in pursuing the administration of the [decedent's estate]. . . ."

tional trauma and requested judgment, jointly and severally, against appellees in the amount of $3,000,000, plus costs of the suit. Appellants filed exceptions to the first accounting and called on their "own counsel" to handle matters with regard to Edgewater.

Additional information set forth in the parties' briefs indicate that Ms. Eckes was the ex-wife of decedent and the mother of appellants. Ms. Eckes was not a beneficiary of the estate. On appeal, appellants also contend that certain facts can be inferred from the complaint. One such inference is that Ms. Eckes "hired appellee Cramer with an actual intent and purpose to directly benefit her children." Appellants also argue that it can be inferred from the well-pled facts that no conflict of interest existed among appellants and Ms. Eckes.

Appellants further assert on appeal that an inference can be drawn from the allegations in the complaint that they were appellee Cramer's clients. They allege, they say, that when they became concerned that appellee Cramer was receiving trademark payments and copyright royalties from Edgewater, he assured them that no agreements had been made on their behalf and forwarded appellants a proposed letter he addressed to Edgewater demanding further negotiations relative to the payments. Appellants also refer to the allegation that they requested appellee Cramer to obtain any written agreements executed between the parties. Finally, appellants argue on appeal that appellee Cramer was negligent because "he failed to draw any distinction relative to who his clients were."

## DISCUSSION

In reviewing the trial court's grant of appellees' motion to dismiss, we assume the truth of all relevant and material well-pled facts, as well as all the inferences that could reasonably be drawn from those facts, in the light most favorable to appellant. *Bennett Heating & Air Conditioning v. Nations-Bank,* 103 Md.App. 749, 757, 654 A.2d 949 (1995), *aff'd in part and rev'd in part, on other grounds, Bennett Heating & Air Conditioning v. NationsBank,* 342 Md. 169, 674 A.2d 534

(1996). Thus, our function is to determine whether dismissal was proper as a matter of law—that is, if the pleaded facts fail to state a cause of action. *Davis v. DiPino*, 337 Md. 642, 648, 655 A.2d 401 (1995). The Court, however, need not consider conclusory charges which have no factual support. *Berman v. Karvounis*, 308 Md. 259, 265, 518 A.2d 726 (1987).

The issue presented on this appeal is whether beneficiaries of an estate have standing to sue the personal representative's attorney for legal malpractice. This is an issue of first impression in Maryland. Before reaching our conclusion, we review the history of Maryland law governing an attorney's liability to third parties, and explore the treatment of this issue by other jurisdictions.

Since 1940, the Court of Appeals has recognized the strict privity rule that an attorney is not liable, in an action arising out of his professional duties, to any one other than his client in the absence of fraud or collusion. *Wlodarek v. Thrift*, 178 Md. 453, 13 A.2d 774 (1940). In *Kendall v. Rogers*, 181 Md. 606, 31 A.2d 312 (1943), the Court explained that, in order to hold an attorney liable for negligence or legal malpractice, an attorney-client relationship must exist between the parties. *Id.* at 613, 31 A.2d 312. Thus, in order to state a cause of action for negligence or legal malpractice against an attorney, a plaintiff must allege three elements: (1) the attorney's employment, (2) his neglect of a reasonable duty, and (3) that such negligence resulted in and was the proximate cause of loss to the client. *Id.* at 611, 31 A.2d 312; *Cavacos v. Sarwar*, 313 Md. 248, 253, 545 A.2d 46 (1988); *Flaherty v. Weinberg*, 303 Md. 116, 128, 492 A.2d 618 (1985).

Maryland continued to follow this strict privity rule until 1972, when a limited exception was adopted in *Prescott v. Coppage*, 266 Md. 562, 296 A.2d 150 (1972). *Prescott* involved a dispute between Coppage, the receiver of a deposit insurance company, and Medley, the receiver of a savings and loan association. *Id.* at 574, 296 A.2d 150. The association owed the insurance company money. *Id.* Medley was appointed receiver by an order of the court and was required among

other things to take possession of the association's assets and property and hold or dispose of them under the court's order. *Id.* Coppage sued Prescott, a court-appointed special counsel to Medley, alleging that his erroneous advice led Medley to pay sums from his receivership to the association's depositors rather than to Coppage, who enjoyed a higher priority status. *Id.* The Court held that Coppage had standing to sue as a third-party beneficiary under the facts and circumstances of the case. *Id.* The Court reasoned that the order of appointment of Medley as receiver "makes clear that all creditors of [the association] were third-party beneficiaries. The order of appointment of Prescott by necessary implication bound him to those creditor beneficiaries." *Id.*

In *Clagett v. Dacy*, 47 Md.App. 23, 420 A.2d 1285 (1980), we examined the Court's analysis in *Prescott* and explained that

[a]lthough the case has a most unusual factual setting, it does seem to suggest a modest relaxation of the strict privity requirement to the extent of allowing a true third party beneficiary to sue an attorney as he could sue any other defaulting or tortious party to a contract made for his benefit.

*Id.* at 27, 420 A.2d 1285. We further clarified that the exception to the strict privity rule afforded to third-party beneficiaries is "a limited one with special utility." *Id.* at 28, 420 A.2d 1285. The exception is most often applied in actions based on drafting errors in wills, "errors that, by their very nature, will likely have a long or delayed effect and will most probably impact upon persons other than the attorney's immediate employer." *Id.* The nonclient must show that he or she was specifically intended to be the beneficiary of the attorney's undertaking, which "will take more than general conclusory allegations." *Id.* at 29, 420 A.2d 1285.

In *Clagett*, the third parties were high bidders at a foreclosure sale. *Id.* at 23, 420 A.2d 1285. The attorneys, however, failed to conduct the sale properly, and it was set aside. *Id.* at 24, 420 A.2d 1285. The debtor redeemed the property by discharging his loan, and the bidders sued the attorneys

alleging they owed them a duty to use care and diligence in conducting the sale properly. *Id.* We affirmed the trial court's dismissal of appellants' complaint because they did not sufficiently allege proper standing to sue the appellee attorneys. *Id.* at 30–31, 420 A.2d 1285. We explained "that an attorney could not lawfully represent both the mortgagee and the bidder in the transaction; and it will not be lightly presumed or inferred that appellees did so." *Id.* at 30, 420 A.2d 1285.

The next appellate decision in Maryland that discussed the third-party beneficiary exception in the attorney malpractice context was *Kirgan v. Parks,* 60 Md.App. 1, 478 A.2d 713 (1984). In *Kirgan,* we said that whether a testamentary beneficiary has standing to sue the attorney who drafted the testator's will is "a definite maybe." *Id.* at 3, 478 A.2d 713. The Court, however, rejected the action because it found the will was valid, the intent expressed in the will was carried out, and there was no concession of error by the attorney. *Id.* at 12, 478 A.2d 713.

Most recently, in *Flaherty v. Weinberg,* 303 Md. 116, 492 A.2d 618 (1985), the Court restated that, as a general rule, Maryland adheres to the strict privity rule in attorney malpractice cases. *Id.* at 130, 492 A.2d 618. The sole exception to this rule is the third-party beneficiary theory. *Id.* "[T]o establish a duty owed by the attorney to the nonclient the latter must allege and prove that the intent of the client to benefit the nonclient was a direct purpose of the transaction or relationship ... the test of third party recovery is whether the intent to benefit actually existed, not whether there could have been an intent to benefit the third party." *Id.* at 130–31, 492 A.2d 618. In other words, the Court noted, "an incidental benefit does not suffice to impose a duty upon the attorney." *Id.* at 131 n. 6, 492 A.2d 618 (quoting R. MALLEN & V. LEVIT, *Legal Malpractice* § 80, at 157 (2d ed.1981)).

*Flaherty* involved a dispute between the purchasers of a home, the Flahertys, and First Federal Savings and Loan Association (First Federal) who approved the Flahertys' loan.

*Id.* at 132, 492 A.2d 618. First Federal secured the services of the law firm of Weinberg, Michel and Sterns (Weinberg) to represent it at the settlement of the purchase of the property. The Flahertys did not hire separate counsel. *Id.* At settlement, Weinberg assured the Flahertys that they were purchasing the property as described in the contract of sale. *Id.* Later, the Flahertys learned that this statement was inaccurate and brought an action against Weinberg for professional malpractice. *Id.* at 133, 492 A.2d 618. The Court, in reviewing the trial court's grant of Weinberg's motion to dismiss, stated that the Flahertys' complaint alleged sufficient facts to survive the motion, and reversed the trial court's dismissal. *Id.* at 137–39, 492 A.2d 618. The Flahertys' complaint alleged that "the hiring of [Weinberg] was intended to benefit the lender as well as the purchasers in that both had identical interests in the property. The plaintiffs were intended either expressly or impliedly, to benefit from the defendant attorneys' undertaking in this matter." *Id.* at 138–39, 492 A.2d 618.

In *Layman v. Layman*, 84 Md.App. 183, 578 A.2d 314 (1990), appellants were the beneficiaries of a will and appellee was the attorney who drafted the testator's will. *Id.* at 184, 578 A.2d 314. Appellants argued that they had standing to proceed against the appellee under the third-party beneficiary exception to the strict privity rule set out in *Flaherty,* and asked us specifically to create an exception to the strict privity rule for attorney malpractice in the case of third-party beneficiaries of a will. *Id.* at 187, 578 A.2d 314. Appellants' complaint alleged "the negligent preparation of the will by failing to foresee the possibility of the surviving spouse waiving the provisions of the will and taking her statutory share." *Id.* at 189, 578 A.2d 314. Unlike the allegations found sufficient in *Flaherty,* these allegations, we held, failed to allege that the intent of the client to benefit the nonclient was the direct purpose of the transaction. *Id.* As to appellants' request that we create a specific exception, we declined relying on our prior decision in *Kirgin* in which we stated that whether a testamentary beneficiary has standing to sue the

attorney who drafted the testator's will is "a definite maybe." *Id.* at 190, 578 A.2d 314. In other words, whether the beneficiaries of a will have standing to sue the attorney who drafted the testator's will depends upon the facts and circumstances of the case. *See also Goerlich v. Courtney Industries, Inc.,* 84 Md.App. 660, 664, 581 A.2d 825 (1990) (appellant's complaint failed to state a cause of action against the corporation's attorney because it did not allege that the corporation intended appellant to be a third-party beneficiary of the attorney's services and their interests were opposed).

Unlike the cases previously discussed, the trial court in the case *sub judice* decided, as a matter of law, that the attorney for the personal representative did not owe a duty to the beneficiaries of the estate. We, therefore, must decide this issue first because if no duty can be established as a matter of law, our case law tells us that an action cannot be maintained against an attorney for malpractice. If, however, we conclude that the trial court erred, we must analyze, under the cases discussed *supra,* whether appellants were the intended third-party beneficiaries under the facts and circumstances of this case.

The trial court, finding no Maryland cases on point, looked for guidance to other jurisdictions. In addition, the court recognized that the third-party beneficiary exception to the strict privity rule requires "an intent and purpose of the client that was to benefit the non-client, [and] that the client and the non-client have identical interests." Finally, the court compared cases, such as *Layman,* in which the exception was applied and noted that

> [i]n the drafting of a will there may well be a benefit that goes to the heirs by way of the desire of the testator to directly draft into the will[,] through an attorney[,][a] benefit [to] those heirs.... But on the other hand, one who comes in to handle an estate does so to administer and close out the estate, and the interest one would assume would be different.

The majority of jurisdictions that decided this question have held, as a matter of law, that the beneficiaries of an estate do not have standing to sue the personal representative's attorney. A close examination of the reasoning of these jurisdictions and our prior case law leads us to the same conclusion. For example, in *Hopkins v. Akins*, 637 A.2d 424 (D.C.1993), the court reasoned in holding, as a matter of law, that a beneficiary of an estate may not sue the attorney of the personal representative for professional negligence. It also ruled that there is a potentially adversarial relationship that exists between an executor's interest in administering the estate and the interest of the beneficiary of the estate. *Id.* at 428. The personal representative's duty is to serve the interests of the estate, not to promote the objectives of any one claimant over another. As such, the personal representative's attorney, as his legal advisor, "is faced with the same task of disposition of conflicts ... [and] represents only one party: the fiduciary." *Id.* (quoting *Goldberg v. Frye*, 217 Cal.App.3d 1258, 266 Cal.Rptr. 483 (4th Dist.1990)).

MARYLAND CODE (1991 REPL.VOL., 1996 SUPP.), § 7–101(a) of the ESTATES & TRUSTS ART. (E.T.) provides that the personal representative of an estate is a fiduciary and has a general duty to administer the estate in accordance with the terms of the will, "fairly considering the interests of all interested persons and creditors." Thus, as in *Hopkins*, if a personal representative hires an attorney to assist him or her in "handling the estate," the direct and primary purpose or intent of the personal representative or client cannot be to benefit the beneficiaries of the estate. Unlike *Flaherty*, in which the receiver was specifically appointed with the purpose of serving the creditor beneficiaries, a personal representative's obligations are to administer the estate and consider the interests of all interested persons and creditors. Although the beneficiaries of the estate may gain some benefit from the personal representative's attorney, this benefit is only incidental. As the Court explained in *Flaherty*, "an incidental benefit does not suffice to impose a duty upon the attorney." *Flaherty*, 303 Md. at 131 n. 6, 492 A.2d 618. Thus, the requirements

under the third-party beneficiary exception to the strict privity rule could not be satisfied under these circumstances.

*Walton v. Davy*, 86 Md.App. 275, 586 A.2d 760 (1991), also illustrates that the duty of the personal representative's attorney is to the personal representative and not to the beneficiaries. In *Walton*, the attorney was the "attorney of record" for the estate. *Id.* at 285, 586 A.2d 760. The personal representative was also a beneficiary. The Court held that the attorney's duty was to advise the personal representative in the distribution of the estate, but he did not represent either the personal representative in his individual capacity as a beneficiary or the other beneficiaries. *Id.* at 285, 289, 586 A.2d 760.

*Goldberger v. Kaplan, Strangis & Kaplan, P.A.*, 534 N.W.2d 734 (Minn.Ct.App.1995), is also instructive. In *Goldberger*, as in the instant case, the personal representative hired attorneys to assist and advise him in fulfilling his fiduciary duty to manage the estate. *Id.* at 738–39. The court stated that "[i]f any 'person' is a third-party beneficiary of the attorneys' services, it is the estate itself; at best individual beneficiaries of the estate are only 'incidental beneficiaries' of the attorneys' services." *Id.* at 739 (citing *Goldberg*, 217 Cal.App.3d at 1268, 266 Cal.Rptr. 483 (beneficiaries of the estate were only incidental beneficiaries of representative's attorneys and could not sue them)). The appellants, however, argued that a personal representative who is not injured by the attorney's malpractice has no incentive to bring suit. *Id.* The *Goldberger* court explained that the beneficiaries can bring an action against the personal representative for breach of fiduciary duties. If the representative's attorney negligently advised him, the attorney may be liable to the personal representative for any legal malpractice. *Id.* (citing *Trask v. Butler*, 123 Wash.2d 835, 872 P.2d 1080 (1994)).

Similarly, in Maryland, according to E.T. § 7–403 (1996 Repl.Vol.), "the personal representative is liable for breach of his fiduciary duty to interested persons for resulting damage or loss to the same extent as a trustee of an express trust." Therefore, the beneficiaries of a trust could bring an action

against the personal representative. In turn, the personal representative, who is a client of the attorney and in an "employment relationship" with the attorney can bring an action against his or her attorney for malpractice or negligence. By contrast, in a will drafting case, if beneficiaries have no standing, an attorney's negligence in drafting a will may be sheltered from suit, and thus the third-party beneficiary exception applies. *See Spinner v. Nutt*, 417 Mass. 549, 631 N.E.2d 542, 545 (1994). Holding as a matter of law that beneficiaries do not have standing to sue the representative's attorney, as explained, would not shield a personal representative's negligent attorney from liability.

Several jurisdictions have also observed that allowing a beneficiary to sue the personal representative's attorney could subject the attorney to an impermissible conflict of interest when the interests of the personal representative, acting on behalf of the estate, conflict with the interests of the beneficiary. *Id.; see also Goldberg*, 217 Cal.App.3d at 1269, 266 Cal.Rptr. 483; *Hopkins*, 637 A.2d at 428; *Spinner*, 631 N.E.2d at 544–45; *Trask*, 872 P.2d at 1085. In *Goldberger*, the court opined:

> It is the potential for conflict that makes direct suit by the beneficiary unacceptable; the fact that the interests of the personal representative and the beneficiary may be aligned in a particular case does not render the suit acceptable.

*Goldberger*, 534 N.W.2d at 739 (citing *Spinner*, 631 N.E.2d at 545); *Trask*, 872 P.2d at 1085. *See also Jewish Hospital v. Boatmen's National Bank*, 261 Ill.App.3d 750, 199 Ill.Dec. 276, 287, 633 N.E.2d 1267, 1278 (5th Dist.1994) (an attorney for an estate has no duty to a beneficiary of an estate, due to the potentially adversarial relationship); *Hill v. Boatright*, 890 P.2d 180, 185 (Colo.Ct.App.1994) (if the attorney of the personal representative acts in pursuit of his or her attorney-client relationship, there is no duty owed to the trust beneficiaries); *Rutkoski v. Hollis*, 235 Ill.App.3d 744, 175 Ill.Dec. 826, 600 N.E.2d 1284 (4th Dist.1992) (the personal representative's attorney's primary duty was to the executor of the estate and,

as such, a legal malpractice claim could not be based on the attorney's breach of duty to the beneficiaries).

■ We hold that the third-party beneficiary exception to the strict privity rule does not apply to confer upon the beneficiaries of an estate standing to sue the personal representative's attorney. Under the general rule, in order to hold an attorney liable for legal malpractice, an attorney-client relationship must exist between the parties. *Cavacos*, 313 Md. at 253, 545 A.2d 46; *Flaherty*, 303 Md. at 128, 492 A.2d 618. As such, unless the beneficiaries have contractual privity or an employment relationship with the attorney, the attorney will not be liable for professional malpractice.

■ In the instant case, appellee Cramer was hired by Ms. Eckes. Attached as an exhibit to the complaint is a Client Representation Agreement between appellee Cramer and "the client," Ms. Eckes, for the purpose of assisting the client, Ms. Eckes, in "handling estate [sic] of Dennis Eckes." Appellants point to the following allegations as indicative of their attorney-client relationship with appellee Cramer:

38. ... Dodge further indicated to Cramer that the Plaintiffs were not entitled to royalty payments for Edgewater's updated editions of the Decedent's works of authorship, despite the fact that the new editions were based on the Decedent's underlying works of authorship.

41. Paula Eckes and certain of the Plaintiffs requested Cramer to obtain any and all written agreements executed between the parties.

46. In approximately July of 1992 Plaintiffs expressed their concern in the matter of the Edgewater payments to Cramer, at which time he indicated to the Plaintiffs that they were not entitled to further trademark and tradename license fee and royalty payments as a result of the death of their father, however, he assured them that no modification, alteration or amendment had been agreed to pertaining to them and forwarded to the heirs a proposed letter to Edgewater which purported to demand further negotiations relative to the payments.

64.  Plaintiffs, as the only heirs of the Estate of Dennis Webster Eckes, were specifically intended to be the beneficiaries of Cramer's service as attorney for the estate of Dennis Webster Eckes.

None of these allegations establishes that appellants and appellees were in a contractual employment relationship, whereby appellants were the clients and appellees were the attorneys.  In fact, the retainer agreement expressly states that Ms. Eckes was appellee Cramer's client.  Appellants' contention that they were appellee Cramer's clients is conclusory and unsupported by factual assertions.  Thus, under the strict privity rule, appellants do not have standing to sue appellees, and the third-party beneficiary exception does not apply.

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANTS.**