CHARLES McC. MATHIAS *v.* ALBERT SEGALOFF,
ET AL.

[No. 71, October Term, 1946.]

*Decided March 13, 1947.*

The cause was argued before MARBURY, C. J., COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Sherman P. Bowers* for the appellant.

*Parsons Newman* for Segaloff, appellee.

*William M. Storm* for the Kesslers, appellees.

MARBURY, C. J., delivered the opinion of the Court.

On January 29, 1941, Butler Brothers, Inc., an unsecured creditor of Albert Segaloff, a dealer in general merchandise in Frederick, Maryland, filed a bill of complaint against the latter in the Circuit Court for Fred-

erick County, alleging a general indebtedness by the defendant of from $5,000 to $6,000 and assets of $2,500 personal property and an equitable interest in real property of $2,500, and asking for the appointment of a receiver. Segaloff filed an answer admitting a debt to the complainant of $500 and agreeing that it would be for the best interest of his creditors to have receivers appointed to "dispose of the merchandise now contained in the said store." On this bill and assent, the court on February 17, 1941, appointed Leslie N. Coblentz and Benjamin B. Rosenstock receivers with full power and authority "to take charge of the property, goods, moneys, books, papers and effects of or belonging to the said Albert Segaloff." The receivers gave bond and in accordance with orders of court ran the business for a short period and then sold the remainder of the goods, chattels and assets on the premises at public sale, and filed an audit, showing the disposition of the entire amount of cash in their hands, and paying a dividend of .120798% on the unsecured claims. This audit was finally ratified on August 20, 1941. No order discharging the receivers was passed, but the receivers paid only one year's premium on their bond.

On April 16, 1941, appraisers were appointed to appraise the real estate and they returned their appraisal five days later, valuing the property at $10,000. There was a mortgage upon the property of $9,000 and Segaloff had a half interest in it prior to the death of his father, and at the death of his father, he obtained an additional one-fourth interest in it, subject to the life estate of his sister. The receivers considered that the value of Albert Segaloff's interest in this real estate was from $400 to $500. At the time the appraisement was filed, they had an opportunity to lease the property for $125 a month for a three-year term. They prepared a lease which provided that all the rental payments were to be made to the Farmers and Mechanics National Bank of Frederick, the mortgagee, which was to apply such payments, first to the payment of taxes, second to the payment of inter-

est on the mortgage, third to pay insurance premiums, fourth, to make the necessary repairs and fifth, to apply the surplus to the curtailment of the mortgage to the bank. The receivers presented a petition to the court for authority to make this lease but the court refused to authorize it. Thereupon, without objection by the receivers, the same lease, with the names of the title owners of the property as landlords retained and the names of the receivers stricken out, was executed by the owners and the lessees who were Harry Kessler, Edward Kessler and Stella Kessler, his wife. The latter immediately took possession of the premises. This situation continued until September 27, 1945, when the title owners, including Albert Segaloff, sold the property to Harry Kessler and Stella Kessler, two of the lessees, and appellees here. The mortgage of the Farmers and Mechanics National Bank of Frederick, which had by that time been somewhat reduced, was paid off and a mortgage was executed by the Kesslers to the Fredericktown Savings Institution for $8,000. The purchase price was $20,000. The re-receivers knew nothing about this until October 21, 1945, when they had an offer for the real estate and at that time, learned of the prior sale. On February 21, 1946, they filed a petition reciting these facts, alleging that the sale of the interest of Albert Segaloff was invalid, that his deed was null and void, and that any consideration moving in his favor was properly an asset of this receivership. They asked that the Segaloff deed be vacated and set aside and also asked for further relief.

The Kesslers answered that the receivers had never at any time taken possession of the real estate, and if they had intended to take possession, they had abandoned that view upon receipt of the appraisement. The appellee, Segaloff, also filed an answer raising the same questions and asserting that when the audit was made in August, 1941, the receivership was thereby terminated and ended and that was the understanding of all parties to the proceedings. He further recited that Butler Brothers, Inc., the original complainant, had sub-

sequently secured a judgment against him for the unpaid balance of its claim. At the hearing of the case, it was stipulated that the receivers did not claim any interest in the mortgage to the Fredericktown Savings Institution and "the only interest they have claim in is any interest of Albert Segaloff in the proceeds of sale of the real estate in question." The chancellor came to the conclusion that the original chancellor found that the small equity existing in 1941 did not justify the sale of the real estate or the continuance of the receivership. He also came to the conclusion that the receivers had abandoned any claim to the real estate, and he had considerable doubt whether the real estate was ever included in the receivership. He cited the rule that an unsecured creditor cannot ordinarily have a receiver appointed and stated that this would have applied had not Segaloff consented. He called attention to the fact that the answer of the defendant to the original petition did not consent to the appointment of a receiver for the real estate. He, therefore, dismissed the petition of the receivers and from this action Leslie N. Coblentz, one of the receivers, appealed after an order was passed by the court granting him leave. The other receiver did not join in the appeal.

The appellees have made a motion to dismiss the appeal on the ground that one receiver alone cannot appeal. While the appeal was pending, the appellant, Coblentz, died, but Charles McC. Mathias was duly appointed his successor by the Circuit Court for Frederick County and, upon application, he was made party appellant in place of Leslie N. Coblentz, and there is no question as to the validity of this substitution. Other questions in the case are whether the interest of Segaloff in the real estate became an asset in the hands of the receivers, to be reduced to cash, and secondly, if such interest did become part of the assets, was it abandoned?

The motion to dismiss the appeal must be denied. One of several trustees cannot act separately. All trustees form but one collective trustee and must exercise the

powers of their office jointly. *Story's Equity Jurisprudence,* 14th Ed., Paragraph 1689, Vol. 3, p. 321; *Donovan v. Miller,* 137 Md. 555, 112 A. 926; *Kramme v. Mewshaw,* 147 Md. 535, 128 A. 468. But receivers do not have to act collectively. They are more like executors. *Story, supra,* Paragraph 1690; *Wlodarek v. Wlodarek,* 167 Md. 556, 175 A. 455. In *Clark on Receivers,* Vol. 1, p. 741, paragraph 676 (b), it is stated: "Where there are two or more receivers appointed, it has been held that one of such receivers has a right to appeal from an order which he believes is inimical to the best interests of the trust imposed upon him, even though the majority of the receivers feel that an appeal should not be taken." In a case in the District Court of the U. S. for the Western District of Pennsylvania, one out of three receivers appointed by that court had taken an appeal to the Supreme Court of Pennsylvania from a decree passed in a proceeding in a State court where certain parties to the receivership had been permitted by the district court to bring suits. One of these parties filed a petition in the district court, asking that the appealing receiver be restrained from going further with this appeal. One of the grounds was that two of the receivers did not appeal, and did not agree with the position taken by the appealing receiver, and the latter, therefore, should not be allowed to act alone. This was in the case of *Goodman Mfg. Co. v. Pittsburgh-Buffalo Co.,* D. C., 222 F. 144, 146. The court said: "It is, or course, true that a receiver is an officer of the court. He derives his existence from an order which the court may vacate, or he may be held to his trust and compelled to exercise it properly. But his individuality is not lost, his conscience fettered, nor his judgment surrendered, when he accepts a receivership. On the other hand, he is presumably chosen because the court believes he will execute the trust reposed in him with wisdom, diligence, and fidelity; nor does it follow that he should necessarily yield his judgment to, or be governed in his actions by, his co-receivers, who may constitute a majority. The majority is not always right, and in the end he must

answer for himself on all questions of fidelity in the execution of the trust." The appeal was heard by the Supreme Court of Pennsylvania and the decree of the lower court affirmed, without any suggestion that the single receiver did not have the right to appeal. Had the court taken such a position, presumably the appeal would have been dismissed rather than affirmed. The case in the state court is *Union Trust Co. of Pittsburgh v. Pittsburgh-Buffalo Co. et al.,* 251 Pa. 1, 95 A. 855.

It is, of course, true that an unsecured creditor cannot successfully file a bill for the appointment of a receiver. *Blake v. Gorsuch,* 166 Md. 647, 171 A. 862. The court in the case before us was given power to act by the assent of the defendant. But the defendant, once having assented to the appointment of a receiver, could not restrict the court in the power given to that receiver. We do not have to consider what would have been the situation had Segaloff answered that he consented to the appointment of a receiver for the merchandise in his store but did not consent to the appointment of a receiver for his real estate. His answer cannot be given that construction by his mere failure to mention the real estate at all. The real estate was mentioned in the bill of complaint and the appointment of receivers was asked to take "possession of and control and manage the property and assets of the defendants." That statement is clearly broad enough to include the real estate and the order appointing the receiver did not distinguish between real and personal property, but directed the receivers to take charge of "the property, goods, etc.," belonging to Albert Segaloff. The receivers had the real estate appraised and subsequently asked the court to permit them to lease it. It was an asset of the estate and undoubtedly was taken charge of by the receivers.

The remaining question is whether the receivers abandoned this property when they concluded (if they did so conclude) that it was not worth while to sell it and when the court refused to allow them to lease it. Property taken in a receivership proceeding is in the custody of the court and the receivers are merely the agents of

the court to hold it and manage it. The title is subject to the authority of the court to direct the receivers to make some disposition of the property. Until the court does so act, the receivers have no authority to abandon any property or give it back to the debtor. So long as they are not discharged (and they are not discharged in this case), they still have control over it. The mere fact that they took no further action respecting the real estate in this case after 1941, does not mean that Albert Segaloff's equitable interest in it did not continue to be part of the receivership estate.

The appellees cite Chief Justice Fuller in the case of *Dushane, Assignee in Bankruptcy v Beall,* 161 U. S. 513, 16 S. Ct. 637, 639, 40 L. Ed. 791. In that case, the court said that assignees in bankruptcy are not bound to accept property which in their judgment is of an onerous and unprofitable nature and would burden instead of benefitting the estate and can elect whether they will accept or not subject to the action of a bankrupt court if their judgment should be unwisely exercised. The court then added, "The same principle is applicable also to receivers" and cited a number of cases in support of the last statement. Examination of these cases, however, shows that they have to do with receivers of the Wabash Railroad and the question involved was whether the receiver who took possession of certain property which the railroad company had leased was obliged to accept the lease or could decline to accept the contract previously made by the railroad. The court held that they had a reasonable time to decide this question and did not have to take over the contract.

These cases are essentially different from the one before us and we are unable to extend the words of Chief Justice Fuller to such a case as the present. Had Segaloff desired to get the real estate out of the receivership, he could have filed a petition asking that the receivers be discharged and the receivership ended. Then the court could have acted upon that and determined the question. Since no such act was taken, the receivers continued to hold the property for the benefit of all parties in interest.

They owe no special duty to the debtor. When the property increases in value, they are entitled to claim it for the benefit of the creditors in the case whose claims have not been fully settled.

The deed made by Albert Segaloff is subject to the right of the receivers to sell his interest in the property, and the purchasers acquired only what he could give them. It may be possible that some settlement will be made which will protect the rights of the creditors and render unnecessary a sale of the Segaloff interest by the receivers. If such settlement is not made, then the chancellor should pass an order directing the receivers to sell the interest of Albert Segaloff. The order of the chancellor will be reversed and the case remanded for further proceedings in accordance with this opinion.

*Order reversed wtih costs and case remanded.*