709 A.2d 1279

**Kimberly Ann FERGUSON et al.**

v.

**Steven J. CRAMER et al.**

**No. 82, Sept. Term, 1997.**

Court of Appeals of Maryland.

May 21, 1998.

Christopher M. Johns, Germantown, for petitioners.

Kathleen Howard Meredith (Stephen Y. Brennan, Iliff & Meredith P.C., Charles Martinez, Eccleston & Wolf, all on brief), Baltimore, for respondents.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, RAKER, WILNER and CATHELL JJ.

CHASANOW, Judge.

In the instant case, we are called upon to determine whether a beneficiary under a will may maintain a cause of action for professional malpractice against an attorney retained by the personal representative of the testator's estate. We recently held that, as a matter of law, a nonclient, testamentary beneficiary could not maintain a cause of action for professional malpractice against the testator's attorney for negligently drafting the testator's will or providing negligent estate planning advice where there was a lack of privity between the beneficiary and the attorney. *Noble v. Bruce,* 349 Md. 730, 709 A.2d 1264 (1998). We believe that the *Noble* decision is

controlling and therefore affirm the judgment of the Court of Special Appeals.

## I.

The following facts alleged in the complaint and the exhibits thereto were before the Court of Special Appeals. Petitioners (the beneficiaries) are the heirs of Dennis Webster Eckes. On April 15, 1991, Mr. Eckes died. The will designated Paula Eckes as the personal representative.[1] On April 24, 1991, Ms. Eckes and Respondent, Steven Cramer, entered into a retainer agreement for Cramer "to represent her in handling and administering" Mr. Eckes's estate. This agreement, attached to the complaint as an exhibit, named Ms. Eckes as the client. The agreement was entered "for the purpose of representation and all appropriate legal action by the law firm for handling [the] estate of Dennis Eckes." The agreement provided that Cramer's fee was to be set by the court and that Ms. Eckes agreed to "pay all reasonable and necessary costs arising during the handling of this claim."

In their complaint, the beneficiaries alleged that "as the only heirs of the Estate of Dennis Webster Eckes, [they] were specifically intended to be the beneficiaries of Cramer's service as attorney for the estate of Dennis Webster Eckes." In addition, the beneficiaries claimed that Cramer owed a duty to assist Ms. Eckes in carrying out her duties as the personal representative of the estate and a duty "to exercise that degree of care and diligence in pursuing the administration of the Estate of Dennis Webster Eckes as used by attorneys engaged in the practice of law." It is further alleged that Cramer breached his duty to the beneficiaries of the estate and that this breach caused both the beneficiaries and the estate to suffer long-term economic loss. The beneficiaries also alleged suffering emotional trauma.

---

1. Ms. Eckes is the ex-wife of Mr. Eckes and the mother of the beneficiaries. Ms. Eckes was not named as a beneficiary under Mr. Eckes's will.

Specifically, the beneficiaries first asserted that Cramer failed to properly obtain accurate appraisals of the testator's assets, including the inventory of Mr. Eckes's business, resulting in an overvaluation of estate assets.[2] The beneficiaries further alleged that Cramer directed the inventory of Mr. Eckes's business to be appraised at its highest retail value. This overvaluation in turn resulted in an increase in the value of Mr. Eckes's gross estate upon which federal and state estate taxes were paid. Once the inventory of Mr. Eckes's business was sold, the beneficiaries assert that substantial legal and accounting fees were expended to obtain refunds from the federal and state governments, presumably due to an overpayment in estate taxes. In addition, the beneficiaries alleged that Cramer failed to adequately advise Ms. Eckes regarding the administration of the estate and the filing of accurate accountings. Finally, the beneficiaries claimed that Cramer failed to adequately advise Ms. Eckes regarding: 1) the estate's rights to the payment of trademark and tradename licensing fees and copyright royalty payments from Edgewater Book Distributors, Inc.; and 2) the estate's rights to copyright royalty payments from Dr. James Beckett, III under a publisher-author agreement. The complaint indicates that the beneficiaries retained their own attorney during the administration of Mr. Eckes's estate and that in March 1993 their counsel contacted Edgewater and demanded payment of the licensing fees and royalties.

The beneficiaries filed their complaint against Cramer and his law firm, Bodie, Nagle, Dalina, Smith & Hobbs (the Respondents) on December 9, 1994. The Respondents later filed a motion to dismiss. On July 8, 1996, the Circuit Court for Anne Arundel County granted the Respondents' motion, ruling that the third-party beneficiary exception to the strict privity rule did not apply and that there was no privity between the beneficiaries and Cramer. On appeal, the Court

2. According to the complaint, the beneficiaries filed exceptions to the first accounting, and the Orphans Court for Anne Arundel County subsequently permitted an amended inventory to be filed to reflect the actual valuation of the estate.

of Special Appeals in a reported opinion affirmed the trial court's judgment. *Ferguson v. Cramer,* 116 Md.App. 99, 695 A.2d 603 (1997). We granted the beneficiaries' petition for writ of certiorari on November 17, 1997.

## II.

The beneficiaries argue that Ms. Eckes, as the personal representative for Mr. Eckes's estate, hired Cramer with the specific intent to directly benefit the beneficiaries, and thus the beneficiaries have standing to sue Cramer under the third-party beneficiary exception to the strict privity rule as set forth in our decisions in *Flaherty v. Weinberg,* 303 Md. 116, 492 A.2d 618 (1985) and *Prescott v. Coppage,* 266 Md. 562, 296 A.2d 150 (1972). In a decision rendered prior to our opinion in *Noble,* the Court of Special Appeals held in the case *sub judice* that the third-party beneficiary exception to the strict privity rule did not apply under the circumstances and that the beneficiaries did not have standing to bring a malpractice action against Cramer because no attorney-client relationship existed between the beneficiaries and Cramer. *See Ferguson,* 116 Md.App. at 112–13, 695 A.2d at 609. We agree.

In *Noble,* we examined whether a nonclient, testamentary beneficiary could maintain a cause of action against the testator's attorney for malpractice arising out of will drafting or estate planning. 349 Md. at 733, 709 A.2d at 1266. We noted that Maryland as a general rule adheres to the strict privity rule in attorney malpractice cases and that, where the risk created by negligent conduct is one of economic loss and not death or serious personal injury, the attorney owes no tort duty to the beneficiaries absent privity or its equivalent. *See Noble,* 349 Md. at 738, 709 A.2d at 1268. In order to state a cause of action for malpractice against an attorney, the first element that a plaintiff must allege and prove is the existence of a duty between the plaintiff and the defendant; specifically, the plaintiff must allege and prove the

attorney's employment.[3] *Flaherty*, 303 Md. at 128, 492 A.2d at 624. This Court, however, has recognized the third-party beneficiary exception as a limited exception to the strict privity rule. *See Flaherty*, 303 Md. at 131, 492 A.2d at 625–26. In order for the third-party beneficiary exception to apply, this Court explained that the nonclient

> "must allege and prove that the intent of the client to benefit the nonclient was a direct purpose of the transaction or relationship. In this regard, the test for third party recovery is whether the intent to benefit actually existed, not whether there could have been an intent to benefit the third party."

*Flaherty*, 303 Md. at 130–31, 492 A.2d at 625. After examining the various approaches taken by jurisdictions regarding attorney liability to nonclients,[4] we held in *Noble* that the third-party beneficiary exception did not apply because the direct purpose and intent of the testator/client in executing a will was not necessarily to benefit the beneficiaries named in the will. 349 Md. at 753–754, 709 A.2d at 1276. Thus, under the traditional rule of strict privity, the beneficiaries could not maintain a malpractice action against the attorneys because no employment relationship existed between the beneficiaries and the attorneys. *Noble*, 349 Md. at 754, 709 A.2d at 1276. This Court reasoned that there were compelling policy reasons for the application of the strict privity rule including: 1) the protection of the integrity and solemnity of wills; and 2) the protection of the attorney-client relationship. *Noble*, 349 Md. at 756, 709 A.2d at 1277. We believe that the *Noble* decision

---

**3.** In addition to the attorney's employment, a plaintiff must allege the attorney's neglect of a reasonable duty and loss to the client proximately caused by that neglect of duty. *Flaherty v. Weinberg*, 303 Md. 116, 128, 492 A.2d 618, 624 (1985).

**4.** The three approaches are: 1) the strict privity theory; 2) the third-party beneficiary theory; and 3) the balancing of factors theory. See *Noble v. Bruce*, 349 Md. 730, 738, 709 A.2d 1264, 1268 (1998) for our discussion of these three theories.

is controlling, and thus, the third-party beneficiary exception does not apply in the instant case.

The application of the third-party beneficiary exception in an attorney malpractice case dates back to 1972. *See Prescott, supra.* In *Prescott,* Coppage as the receiver for Security Financial Insurance Corporation (Security), a creditor of Maryland Thrift Savings and Loan Company (Maryland Thrift), sued Medley, the court-appointed receiver for Maryland Thrift. 266 Md. at 565, 296 A.2d at 152. One of Medley's duties set forth in the court order appointing him was " 'to take possession of [Maryland Thrift's] assets and property and hold or dispose of them under the direction, supervision and further order' " of the court. *Prescott,* 266 Md. at 574, 296 A.2d at 156. Coppage also sued Prescott who was specially appointed by the court as counsel "to aid [Medley] in the performance of his duties as receiver." *Id.* Coppage alleged that Medley and Prescott improperly distributed Maryland Thrift's assets to lower priority creditors instead of paying the balance due on Security's priority claim in the amount of $40,000. *Prescott,* 266 Md. at 565, 296 A.2d at 151. This Court stated that, in order to determine who is a creditor beneficiary, courts should consider the following as controlling factors: "the intention of the parties to recognize a person or class as a primary party in interest as expressed in the language of the instrument and consideration of the surrounding circumstances as reflecting upon the parties' intention...." *Prescott,* 266 Md. at 574, 296 A.2d at 156. This Court further noted that the court order appointing Medley as the receiver clearly indicated that all of Maryland Thrift's creditors were third-party beneficiaries and that the court order appointing Prescott "by necessary implication bound him to those creditor beneficiaries." *Id.* Thus, as court-appointed counsel, Prescott owed a duty to the court as well as to any beneficiaries the court intended to benefit. We held that the acceptance by Medley and Prescott of the duties entailed in the court order created conditions that gave Coppage standing to sue Prescott as a third-party creditor beneficiary. *Id.*

■ The beneficiaries claim that the legal relationships in the instant case are virtually identical to those in *Prescott.* Specifically, the beneficiaries assert in their brief that they are third-party beneficiaries because the court-appointed "personal representative (fiduciary) hired ... Cramer (attorney) with an actual intent to directly benefit the heirs (beneficiar[ies]) by *aiding* the personal representative in the performance of her duties." We, however, believe *Prescott* is distinguishable because the instant case does not involve a receivership. *Prescott* involved a receivership for which a receiver was specifically appointed by the court for the purpose of taking possession of Maryland Thrift's assets and holding or disposing of them for the benefit of the creditor beneficiaries, and the receiver's attorney was specifically appointed by the court in order to aid the receiver in the performance of his duties. *See Prescott,* 266 Md. at 574, 296 A.2d at 156. In a receivership proceeding, property taken "is in the custody of the court and the receivers are merely the agents of the court to hold it and manage it" for the benefit of parties in interest, including creditors. *Mathias v. Segaloff,* 187 Md. 690, 696–97, 51 A.2d 654, 657 (1947). "The title is subject to the authority of the court to direct the receivers to make some disposition of the property. Until the court does so act, the receivers have no authority to abandon any property or give it back to the debtor. So long as they are not discharged ..., they still have control over it." *Mathias,* 187 Md. at 697, 51 A.2d at 657. By contrast, in the administration of an estate, the court is not as involved. In performing his or her duties, a personal representative may act "without application to, the approval of, or ratification by the court." Maryland Code (1974, 1991 Repl.Vol., 1997 Supp.), Estates & Trusts Article, § 7–401(a).[5]

■ In addition, the duty of the receiver differs from that of the personal representative. *See Melba Inv. Atl. v. Mimi Selig Homes,* 44 Md.App. 234, 235, 238, 407 A.2d 808, 808, 810 (1979)(noting that a receiver's role is to protect the interests of

---

5.  Unless otherwise indicated, all statutory references will be to Maryland Code (1974, 1991 Repl.Vol., 1997 Supp.), Estates & Trusts Article.

all creditors, not just the petitioning creditor). Unlike a receiver, who owes a specific duty to all creditors, a personal representative is a fiduciary and

> "[h]e is under a general duty to settle and distribute the estate of the decedent in accordance with the terms of the will and the estates of decedents law as expeditiously and with as little sacrifice of value as is reasonable under the circumstances. He shall use the authority conferred upon him by the estates of decedents law, by the terms of the will, by orders in proceedings to which he is a party, and by the equitable principles generally applicable to fiduciaries, fairly considering the interests of all interested persons and creditors."

§ 7–101(a). As one court has explained, the primary goal of the personal representative is "to serve the interests of the estate, not to promote the objectives of one group of legatees over the interests of conflicting claimants." *Goldberg v. Frye,* 217 Cal.App.3d 1258, 266 Cal.Rptr. 483, 489 (1990). Thus, in administering the estate in accordance with the will, a personal representative has a general duty to consider the interests of all interested persons and creditors, including beneficiaries, and is not merely an agent of the court.

Moreover, it cannot be said in the instant case that the intent of the personal representative was to benefit the beneficiaries of the estate and that such an intent was the direct purpose of Ms. Eckes's hiring an attorney to assist her in handling Mr. Eckes's estate. In performing his or her duties, a personal representative is permitted, under § 7–401(a), to "exercise all of the power or authority conferred upon him by statute or in the will, without application to, the approval of, or ratification by the court. Except as validly limited by the will or by an order of court, a personal representative may ... exercise the powers enumerated in this section." Specifically, § 7–401(w) permits a personal representative to employ "persons with special skills," such as an attorney, to advise or assist the personal representative in performing his or her administration duties.[6] By its express terms, § 7–401(w)'s

---

6. We note that such employment is not subject to court approval. *See* § 7–401(a). A receiver, however, is prohibited from hiring an attorney without prior approval of the court. *See* Maryland Rule 13–301(a).

purpose appears to be to permit the personal representative to seek the advice of an attorney in performing his or her duties rather than to provide representation to creditors and beneficiaries of the estate. Thus, where a personal representative hires an attorney to assist him or her in handling the estate, as in the instant case, the direct purpose in hiring the attorney is not to benefit the beneficiaries. As the Court of Special Appeals noted, any benefit to the beneficiaries from the personal representative's attorney is merely incidental. *Ferguson,* 116 Md.App. at 109, 695 A.2d at 608. Such incidental benefit is not sufficient to impose a duty upon an attorney. *See Flaherty,* 303 Md. at 131 n. 6, 492 A.2d at 625 n. 6. In cases such as the instant case, the attorney owes a duty solely to his or her client, the personal representative. *See Walton v. Davy,* 86 Md.App. 275, 285, 586 A.2d 760, 765 (noting that, where the personal representative was also a beneficiary, the attorney of record for the estate owed a duty to the personal representative to advise and aid the personal representative in the distribution of the estate and that the attorney did not represent the personal representative, or any other beneficiary, personally), *cert. denied,* 323 Md. 309, 593 A.2d 669 (1991).

Furthermore, the beneficiaries in the instant case did not allege in their complaint that Ms. Eckes intended the beneficiaries to benefit directly from Cramer's services as an attorney. *See Flaherty,* 303 Md. at 139, 492 A.2d at 629–30. Instead, the beneficiaries alleged in the complaint that, "as the only heirs of the Estate of Dennis Webster Eckes, [the beneficiaries] were specifically intended to be the beneficiaries of Cramer's service as attorney for the estate." The beneficiaries' status as the only heirs of Mr. Eckes does not automatically make them third-party beneficiaries of the contract between Cramer and Ms. Eckes. As we noted in *Noble,* " [t]here is a critical difference between being the intended beneficiary of an estate and being the intended beneficiary of a contract between a lawyer and his client.' " 349 Md. at 754, 709 A.2d at 1276 (quoting *Copenhaver v. Rogers,* 238 Va. 361, 384 S.E.2d 593, 596 (1989)).

A number of jurisdictions, some of which do not ordinarily subscribe to the strict privity theory, have decided the same issue before this Court and have held, as a matter of law, that beneficiaries under a will do not have standing to sue the personal representative's attorney. *See, e.g., Goldberg,* 266 Cal.Rptr. at 489 (applying the balancing of factors test); *Hopkins v. Akins,* 637 A.2d 424, 428–29 (D.C.1993)(applying the strict privity rule); *Neal v. Baker,* 194 Ill.App.3d 485, 141 Ill.Dec. 517, 519, 551 N.E.2d 704, 706(holding that the third-party beneficiary theory did not apply), *appeal denied,* 132 Ill.2d 546, 144 Ill.Dec. 259, 555 N.E.2d 378 (1990); *Goldberger v. Kaplan, Strangis and Kaplan,* 534 N.W.2d 734, 738 (Minn.Ct.App.1995)(applying the balancing of factors test to assist court in determining whether beneficiaries were third-party beneficiaries of the attorney-client relationship); *Trask v. Butler,* 123 Wash.2d 835, 872 P.2d 1080, 1085 (1994)(applying the balancing of factors test). These courts have reasoned that beneficiaries under a will are not third-party beneficiaries of the attorney-client relationship because the direct purpose of the contract between the attorney and the personal representative is not to provide a benefit to the beneficiaries. *See, e.g., Goldberg,* 266 Cal.Rptr. at 489; *Neal,* 141 Ill.Dec. at 519, 551 N.E.2d at 706. In addition, a primary concern addressed by these courts is the potential conflict of interest that may arise during estate administration between the personal representative and the beneficiaries. *See, e.g., Trask,* 872 P.2d at 1085; *Goldberger,* 534 N.W.2d at 739. Finally, these courts reason that the personal representative owes the beneficiaries under a will a duty to act in the best interests of the estate, and where the personal representative's conduct falls below the standard of care the beneficiaries may sue the personal representative for breach of fiduciary duty. *See id.* "By directing estate beneficiaries to file suit against the personal representative for breach of fiduciary duty, we properly place the emphasis of estate decisionmaking upon the correct individual—the personal representative." *Trask,* 872 P.2d at 1085.

■ Although there are not the same problems with proof as in *Noble*,[7] there are compelling policy reasons for the application of the strict privity rule in the instant case. First, other procedures are available to protect the beneficiaries' interests from malpractice. *See Goldberger*, 534 N.W.2d at 739. In the instant case, the intermediate appellate court reasoned that the personal representative's attorney would not be shielded from liability if the beneficiaries had no cause of action as a matter of law because the beneficiaries would be permitted to sue the personal representative for breach of fiduciary duty and the personal representative in turn could sue his or her negligent attorney for malpractice. *Ferguson*, 116 Md.App. at 110–11, 695 A.2d at 608. We agree. Under § 7–403, "[i]f the exercise of power concerning the estate is improper, the personal representative is liable for breach of his fiduciary duty to interested persons for resulting damage or loss to the same extent as a trustee of an express trust." This remains true even where the personal representative hires an attorney and relies on his or her advice. *See Ayers v. Liller*, 65 Md.App. 178, 183–84, 499 A.2d 1309, 1312–13 (1985). Thus, where the personal representative's exercise of power in administering the estate is improper and the statute of limitations has not run, beneficiaries under a will could bring an action against the personal representative for breach of fiduciary duty. Any cause of action the beneficiaries may have had in the instant case should have been brought against the personal representative, the beneficiaries' mother. The beneficiaries cannot attempt to insulate their mother from liability by asserting instead that her attorney breached a duty owed to the beneficiaries. If, however, an attorney gives negligent advice to the personal representative, then he or she as the

---

7. In *Noble*, we noted that "[a]ttorney malpractice cases involving non-clients and arising out of will drafting or estate planning require special considerations because the testator/client is dead." 349 Md. at 755, 709 A.2d at 1276–1277. Extrinsic evidence is therefore not admissible to prove that the testator's intent differed from the intent expressed in the will. 349 Md. at 755, 709 A.2d at 1277. Here, however, the personal representative-client is alive unlike the testator/client in *Noble*.

client would have a cause of action against the attorney for malpractice. The attorney therefore would not be shielded from liability for malpractice. In addition, beneficiaries under a will may seek removal of the personal representative if he or she is unable or incapable of discharging his or her duties and powers effectively, or "has failed, without reasonable excuse, to perform a material duty pertaining to the office." § 6–306(a)(3) & (6).

The strict privity rule also protects the attorney-client relationship. In this case, the intermediate appellate court reasoned that "allowing a beneficiary to sue the personal representative's attorney could subject the attorney to an impermissible conflict of interest when the interests of the personal representative, acting on behalf of the estate, conflict with the interests of the beneficiary." *Ferguson,* 116 Md.App. at 111, 695 A.2d at 608. The personal representative's duty is not to promote the interests of one group of beneficiaries over the conflicting interests of another group. In this capacity, the personal representative is "obligated to communicate with, and to arbitrate conflicting claims among, those interested in the estate." *Goldberg,* 266 Cal.Rptr. at 489. In representing the personal representative, the personal representative's attorney has the same responsibilities. *Id.* Allowing a cause of action in the instant case could interfere with the attorney's ability to fulfill his or her duty of loyalty to the client and compromise the attorney's ability to represent the client zealously because the beneficiary often "becomes the opposing party in an adversarial forum" during the administration of an estate. *See Neal,* 141 Ill.Dec. at 519, 551 N.E.2d at 706. According to the beneficiaries, the complaint in the instant case alleged facts which do not indicate a conflict among the beneficiaries and the personal representative. The beneficiaries also claim that "it is ethically permissible for an attorney to represent both the fiduciary and the beneficiaries as long as they 'desire the same result,' even if their interests may vary in degree." We disagree.

"It is *the potential* for conflict that makes direct suit by the beneficiary unacceptable; the fact that the interests of the

personal representative and the beneficiary may be aligned in a particular case does not render the suit acceptable." *Goldberger*, 534 N.W.2d at 739 (emphasis in original). Although the personal representative was not a beneficiary in the instant case, the interests of the personal representative and the interests of the beneficiaries were in fact adverse. The beneficiaries filed exceptions to the personal representative's accounting of Mr. Eckes's estate, resulting in an adversarial proceeding. The beneficiaries also hired their own attorney to represent them regarding the royalty payments from Edgewater. As we stated in *Noble*, allowing a cause of action by the beneficiaries against the personal representative's attorney would place an undue burden on attorney-client relationship and possibly the legal profession as a whole. 349 Md. at 742, 709 A.2d at 1270. As one court stated:

> "While the fiduciary in the performance of this service may be exposed to the potential of malpractice . . ., the attorney by definition represents only one party: the fiduciary. It would be very dangerous to conclude that the attorney, through performance of his service to the administrator and by way of communication to estate beneficiaries, subjects himself to claims of negligence from the beneficiaries. The beneficiaries are entitled to even-handed and fair administration by the fiduciary. They are not owed a duty directly by the fiduciary's attorney."

*Goldberg*, 266 Cal.Rptr. at 489–90. We therefore conclude that the third-party beneficiary exception does not apply in the instant case, and thus, the strict privity rule applies.

### III.

Turning to the instant case, the beneficiaries need only to have alleged facts that, if proven, would entitle them to relief in order to survive a motion to dismiss. *See Noble*, 349 Md. at 759, 709 A.2d at 1279. If the pleadings do not as a matter of law allege sufficient facts to entitle a party to the relief sought on the claim, a court may grant a motion to dismiss for failure to state a claim pursuant to Maryland Rule 2–322(b). *Id.*

The beneficiaries assert that in the event the third-party beneficiary exception does not apply Cramer represented the beneficiaries' direct interests regarding the royalty payments from Edgewater and Beckett and, thus, an attorney-client relationship existed between Cramer and the beneficiaries.[8] As support, the beneficiaries specifically point to paragraphs 38, 46, and 59 of the complaint. These paragraphs provide:

"38. Subsequent to Decedent's death Defendant, in 1991, Cramer communicated several times with Edgewater and was informed by William Dodge, the president of Edgewater, that Decedent had entered into a series [of] agreements in 1986.... Dodge further indicated to Cramer that the Plaintiffs were not entitled to royalty payments for Edgewater's updated editions of the Decedent's works of authorship, despite the fact that the new editions were based on the Decedent's underlying works of authorship.

\* \* \*

46. In approximately July of 1992 Plaintiffs expressed their concern in the matter of the Edgewater payments to Cramer, at which time he indicated to the Plaintiffs that they were not entitled to further trademark and tradename license fee and royalty payments as a result of the death of their father, however, he assured them that no modification, alteration or amendment had been agreed to pertaining to them and forwarded to the heirs a proposed letter to Edgewater which purported to demand further negotiations relative to the payments.

---

**8.** The beneficiaries also claim that Cramer performed duties that Ms. Eckes as the personal representative owed directly to the beneficiaries, and thus, Cramer was in privity with the beneficiaries because he in fact acted as a personal representative for the estate. We need not address this contention which was raised for the first time in the beneficiaries' brief in this Court. This issue is not preserved for our review because it was not advanced before the Court of Special Appeals and was not raised in the beneficiaries' petition for writ of certiorari.

* * *

59. Cramer advised Paula Eckes in his capacity *as attorney for the Estate* that Beckett had offered $ 25,00[0].00 in full settlement of any and all claims *the estate* might have against him. He further advised Paula Eckes that *the estate* was not entitled to any further split of the royalties received from House of Collectibles and that the offer of Beckett was a reasonable one in light of the circumstances and that in the event of litigation *the Estate* would be unlikely to prevail." (Emphasis added).

We conclude that none of these allegations establishes an attorney-client relationship between the beneficiaries and Cramer.[9] In fact, the complaint itself indicates in several places that Ms. Eckes was Cramer's client, repeatedly refers to Cramer as the "attorney for the Estate," and specifically states that Ms. Eckes employed Cramer "to represent her in handling and administering the estate." The representation agreement attached as an exhibit to the complaint also indicates that Ms. Eckes was Cramer's client. Furthermore, although not determinative, the beneficiaries retained their own counsel with regard to the royalty payments the beneficiaries expected from Edgewater. We therefore hold that the Court of Special Appeals did not err in affirming the trial court's dismissal of the instant case on the ground that the beneficiaries did not have standing to maintain a cause of action against the personal representative's attorney under the strict privity rule.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

---

9. We note the possibility that the personal representative's attorney could undertake an obligation to provide legal services for a beneficiary of the estate despite the potential conflict of interest. In such a case, a "duty would be created directly in favor of the beneficiary, an attorney-client relationship would be established, and the beneficiary would have recourse against the attorney for damages...." *Goldberg v. Frye,* 217 Cal.App.3d 1258, 266 Cal.Rptr. 483, 489 (1990).