William H. **MURPHY, Jr.,** Plaintiff,

v.

**COMPTROLLER OF THE TREASURY, et al.,** Defendants.

No. CIV.A. S–01–2032.

United States District Court, D. Maryland.

June 6, 2002.

Curtis H. Booth, Cowdrey Thompson and Karsten PA, Easton, MD, Kurt D. Karsten, Cowdrey, Thompson & Karsten, PA, Annapolis, MD, for plaintiff.

Lawrence P. Blaskopf, U.S. Dept. of Justice, Washington, DC, for defendants.

*MEMORANDUM*

GESNER, United States Magistrate Judge.

Plaintiff, William H. Murphy, Jr., brings this interpleader action against the United States and the State of Maryland to determine entitlement to funds resulting from the settlement of two lawsuits. (Paper No. 2). The case was referred to the undersigned for all proceedings with the consent of the parties. 28 U.S.C. § 636(c); Local Rule 301.4. Pending before the court are defendant United States' Motion for Summary Judgment, plaintiff's Opposition, and defendant's reply. (Paper Nos. 12, 16, 17). A hearing on the motion was held before this court on June 4, 2002. For the reasons set forth below, the court grants defendant United States' Motion for Summary Judgment.

## I. *Background*

Plaintiff William Murphy ("Murphy") filed this interpleader action to determine the superiority of claims to $130,460.20. This amount represents the settlement proceeds from two lawsuits brought by Murphy regarding legal services William A. Hackney ("Hackney") provided to the Estate of Virginia S. Murphy ("the Estate"), mother of Murphy. (Paper No. 2 at ¶ 8). Murphy sued Hackney, attorney for the Estate and its co-personal representative, and Fidelity National Insurance Company alleging that Hackney committed professional negligence by, *inter alia*, negligently valuing the Estate's assets and computing the Estate's tax liability, conduct that resulted in a substantial assessment of taxes, penalties and interest against the Estate. (Paper No. 12; Exh. A ¶ 22).[1] Murphy and the United States

---

1. On September 9, 1993, the Internal Reve- nue Service ("IRS") assessed taxes totaling

each argue they have a superior claim to some or all of the settlement proceeds.

Murphy argues that he has a superior claim to a portion of the settlement proceeds because of the dual capacity in which he brought both underlying suits. Murphy was both primary beneficiary and co-personal representative of the Estate and brought each suit in this dual capacity: (1) on behalf of the Estate as its co-personal representative; and (2) in his individual capacity.[2] At the time of settlement, both claims were still pending. Murphy contends, therefore, that a portion of the money received in settlement of these suits resolved his individual claims. Therefore, according to Murphy, that portion of the proceeds is his property and because the federal tax lien applies only to Estate property, Murphy argues he has a superior claim to that portion of the settlement proceeds attributable to his individual claims.[3]

The United States argues that it has a superior claim to all of the settlement proceeds because of the federal tax lien against the Estate. The United States argues that, under Maryland law, the primary beneficiary of an estate (Murphy) does not have standing to sue the attorney for the estate (Hackney) in an individual capacity. Because, as the United States argues, Murphy did not have standing to sue Hackney in an individual capacity, all the money recovered in settlement is attributable to Murphy's claims on behalf of the Estate as co-personal representative (rather than as a beneficiary of the Estate). Therefore, the United States argues that the settlement proceeds are entirely Estate property and subject to the federal tax lien.

## II. *Summary Judgment Standard*

Summary judgment is appropriate when there is no genuine issue of material fact and a decision may be rendered as a matter of law. Fed.R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party moving for summary judgment has the burden to demonstrate the absence of any genuine issue of material fact. Fed.R.Civ.P. 56(c); *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir.1987).

If there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505.

---

$292,199.00 against the Estate. (Paper No. 12; Decl. of Lawrence Miles). As of January 14, 2002, the Estate owed the IRS $1,271,800.98 in estate taxes, penalties and interest. (*Id.*).

On April 28, 1994, the Comptroller of the State of Maryland assessed taxes against the Estate totaling $33,377.41. The State has also placed a tax lien against the Estate. The State of Maryland did not file an opposition to the United States' motion, but instead filed a reply, which stated that "[d]efendant Comptroller concedes that in the current posture of the case its interest in the proceeds is inferior to the United States. This is because priority between two competing tax liens is decided by the date of assessment." (Paper No. 19).

The court, therefore, will resolve the pending motion for summary judgment on the issue of priority of entitlement to the funds as between the United States and Plaintiff Murphy.

2. Murphy claimed that Hackney's negligence resulted in pecuniary damage to the Estate from the penalties and interest on the outstanding taxes and pecuniary damage to himself in the form of a diminished distributive share of the Estate. (*Id.* ¶¶ 31, 32).

3. Murphy does not state how much of the settlement proceeds are attributable to his individual claims, instead arguing that the amount is a factual issue that makes summary judgment inappropriate. (Paper No. 16 at 4).

The only facts that are properly considered "material" are those that might affect the outcome of the case under the governing law. *Id.* at 248, 106 S.Ct. 2505. If the evidence favoring the non-moving party is "merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. 2505. Thus, the existence of only a "scintilla of evidence," is not enough to defeat a motion for summary judgment. *Id.* at 252, 106 S.Ct. 2505.

To determine whether a genuine issue of material fact exists, all facts and all reasonable inferences drawn therefrom are construed in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party, however, may not rest on its pleadings, but must show that specific, material facts exist to create a genuine, triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

On those issues for which the non-moving party will have the burden of proof, it is his or her responsibility to oppose the motion for summary judgment with affidavits or other evidence specified in the rule. *Id.;* Fed.R.Civ.P. 56(e); *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible

evidence, that could carry the burden of proof in her claim at trial."). If a party fails to make a showing sufficient to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment is proper. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

## III. *Discussion*

The issue before the court is whether plaintiff has presented sufficient evidence to establish there is a factual dispute as to the superiority of the United States' claim to all of the settlement proceeds that would preclude summary judgment. The parties do not dispute that, because of its tax lien, the United States has a superior claim to the settlement proceeds recovered as a result of Murphy's claims on behalf of the Estate in his capacity as co-personal representative. The dispute revolves around whether any part of the settlement proceeds were recovered as a result of claims brought by Murphy in his individual capacity as primary beneficiary under the will.[4]

The settlement proceeds could be the result of claims raised by Murphy as primary beneficiary under the will only if, under Maryland law, Murphy had standing to sue Hackney as an individual, *i.e.*, in a capacity other than on behalf of the Estate as its co-personal representative.[5] Maryland follows a strict privity

---

4. Murphy conceded at the hearing that any amount recovered as a result of his claims as co-personal representative inure to the benefit of the Estate. In this regard, he limited any "individual" claims to those made in his capacity as primary beneficiary and not as co-personal representative of the Estate.

5. Murphy seems to argue that by virtue of the fact that he alleged his claims in his dual capacity and both types of claims were pending at the time of settlement, the settlement

proceeds were recovered as a result of both. The parties, however, are not free to characterize settlement proceeds in a manner not supported by the underlying law. *See Hemelt v. United States*, 122 F.3d 204, 207–08 (4th Cir.1997). In *Hemelt*, the parties in an ERISA action sought to characterize settlement proceeds as personal injury damages in order to avoid taxes. The Fourth Circuit held that the proceeds could not be characterized in this manner because the statute itself did not provide for personal injury damages. *Id.*

rule in causes of action for malpractice against an attorney, which requires a plaintiff to prove an employment relationship with the attorney before an action can be maintained. *Noble v. Bruce,* 349 Md. 730, 709 A.2d 1264, 1268–69 (1998) (beneficiaries had no standing to sue attorney hired by decedent to draft a will); *Ferguson v. Cramer,* 349 Md. 760, 709 A.2d 1279, 1287 (1998) (beneficiaries had no standing to sue attorney hired by personal representative to help administer the estate). In the case of a nonclient plaintiff, (*i.e.,* where there is no employment relationship), the so-called "third party beneficiary theory" is a narrow exception to the strict privity requirement. *Flaherty v. Weinberg,* 303 Md. 116, 492 A.2d 618, 625 (1985). To fit within this exception, the nonclient "must allege and prove that the intent of the client to benefit the nonclient was a direct purpose of the transaction or relationship." *Id.* The central question before this court, therefore, is whether, as an individual, Murphy had standing to sue Hackney either because of an employment relationship with Hackney or because, as primary beneficiary under Mrs. Murphy's will, he was the intended third party beneficiary of Hackney's legal services to the Estate.

■ The United States argues that Murphy did not have standing to sue Hackney as an individual because, under Maryland law, the primary beneficiary of an estate does not have standing to sue the estate's attorney for malpractice. (Paper No. 12 at 5). The United States relies on *Ferguson v. Cramer,* 349 Md. 760, 709 A.2d 1279 (1998), in which the Maryland Court of Appeals applied the strict privity rule where beneficiaries of an estate sued the attorney hired by the estate's personal

representative. In *Ferguson,* the court determined that the beneficiaries did not have standing because they did not have an employment relationship with the attorney and, in the alternative, they had not established that they were the intended third party beneficiaries of the personal representative's contract with the attorney. *Id.* at 1286. Although Murphy sought to distinguish *Ferguson* in his opposition, at the hearing, he admitted that *Ferguson* controlled in this case. Therefore, in order to maintain an individual claim against Hackney, Murphy must show either an employment relationship with Hackney or that he was the intended third party beneficiary of Hackney's legal services.

Murphy claims that he had standing to sue Hackney because, as primary beneficiary under the will, he was the intended third party beneficiary of Hackney's legal services to the Estate. Murphy contends that by virtue of the fact that he is primary beneficiary, Mrs. Murphy's purpose in engaging Hackney's legal services for the Estate must have been to benefit Murphy. Merely being the primary beneficiary of an Estate, however, is insufficient to establish the requisite intent on the part of Mrs. Murphy that Murphy benefit from her contract for legal services with Hackney. *Noble,* 709 A.2d at 1276 ("[T]here is a critical difference between being the intended beneficiary of an estate and being the intended beneficiary of a contract between a lawyer and his client."); *Ferguson,* 709 A.2d at 1284 ("[W]here a personal representative hires an attorney to assist him or her in handling the estate ... the direct purpose in hiring the attorney is not to benefit the beneficiaries."). Murphy's burden, therefore, is to prove that Mrs.

---

Similarly, in this case, the settlement proceeds cannot be characterized as compensation for Murphy's individual claims if, under

Maryland law, Murphy could not bring the suits in an individual capacity.

Murphy's direct purpose in engaging Hackney was to benefit Murphy as primary beneficiary of the Estate. *See Ferguson*, 709 A.2d at 1283 (incidental benefit to beneficiaries from legal services by personal representative's attorney insufficient to impose duty of care on attorney); *Flaherty*, 492 A.2d at 625 (nonclient must "allege and prove that the intent of the client to benefit the nonclient was a direct purpose of the transaction or relationship").

The only evidence Murphy offers to support his assertion that he was the intended third party beneficiary is Hackney's deposition testimony which was taken in connection with the underlying lawsuit.[6] Murphy contends that Hackney admitted that he had a duty to Murphy individually and that he provided legal services to Murphy in his individual capacity. (Paper No. 16 at 4). A review of the deposition testimony reveals that, contrary to Murphy's assertion, Hackney did not admit a duty to Murphy individually or that he performed legal services for Murphy in an individual capacity. The pertinent testimony from Hackney's deposition is as follows:

Q: When Mrs. Murphy died, you and Mr. Murphy were appointed as co-personal representatives of the estate?

A: That's correct.

Q: And that was by virtue of Mrs. Murphy's will?

A: That's correct.

Q: Did you then provide legal services to the estate?

A: Yes.

Q: And that was in the form of administering the estate?

A: Yes.

Q: Did you at some point complete a document which appointed you as the resident agent for the estate?

A: Yes.

Q: In the course of administering the estate, did you provide legal services for Mr. Murphy also individually?

A: Yes. To the extent that they were connected with the estate.

Q: In other words, you were serving as his legal advisor in administering the estate, in his role as co-personal representative?

A: Yes.

Q: And the compensation which you were to receive once the estate was closed was intended to compensate you for both roles, providing legal services to the estate, and providing legal services to Mr. Murphy?

A: That's correct.

(Paper No. 16; Exh. A at 19–20).

At most, the deposition testimony suggests that Hackney's legal services to the Estate may have benefitted Murphy in his role as co-personal representative on behalf of the Estate. The testimony, however, does not reflect that Mrs. Murphy's purpose in engaging Hackney for legal services was to benefit Murphy as primary beneficiary.

At the hearing, Murphy did not offer any other evidence of Mrs. Murphy's purpose in engaging Hackney for legal services. He conceded that there was no retainer agreement between Mrs. Murphy and Hackney which might reflect her intent in engaging Hackney. Further, the fact that Mrs. Murphy introduced Hackney to Murphy as the attorney for the

---

**6.** He alleges in his complaint against Hackney and argued at the hearing that Murphy, Hackney and Virginia Murphy specifically intended that Murphy would be the third party beneficiary of Hackney's legal services to the Estate.

(Paper No. 12; Exh. A ¶ 28). These allegations, however, are not evidence sufficient to create a genuine issue of fact as to Mrs. Murphy's intent. *See Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

Estate belies the notion that Hackney's services were intended to benefit Murphy individually. In sum, Murphy has not directed the court to any evidence that he was the intended third party beneficiary of Hackney's legal services.[7]

At the hearing, for the first time, Murphy raised the argument that in addition to being an intended third party beneficiary, he also had a direct employment relationship with Hackney. Murphy claims that between 1991 and 1994, he had several conversations with Hackney during which Hackney gave him legal advice regarding assets he had already received from the Estate, specifically grounds rents. He conceded that he did not have an employment contract with Hackney, either written or oral.

Murphy argues that, as a matter of law, an attorney-client relationship is established when a client consults an attorney with the expectation of receiving legal services. Accordingly, Murphy contends that he formed an attorney-client relationship with Hackney because he consulted Hackney with the expectation that he would receive legal advice about handling the ground rents he received as beneficiary under the will.

Murphy's argument that he had a direct employment relationship with Hackney fails in two respects. First, Murphy's argument that his expectation that the legal advice created an attorney-client relationship fails substantively. At the hearing, when asked by the court, Murphy could not point to any law to support his contention that under such circumstances, his expectation regarding Hackney's legal advice was sufficient to create a direct employment relationship. Furthermore, Murphy acknowledged that there was no factual connection between Hackney's legal advice regarding ground rents and the alleged negligent conduct in the underlying complaints, which revolved around Hackney's handling of the Estate taxes. Murphy explained the issue of Hackney's negligent legal advice arose during discovery in the underlying malpractice suits,[8] but acknowledged that he did not amend his complaints in the underlying suits to include allegations regarding negligent legal advice from Hackney.

Second, even if Murphy's intent to create an attorney-client relationship controls, his claim in this case fails for lack of proof. Although an express employment agreement is not required, "the circumstances must clearly indicate an employment relationship." *Flaherty*, 492 A.2d at 627. As the nonmoving party, Murphy would be required to present affidavits or other evidence to show a genuine factual issue as to Murphy's intent at the time he consulted Hackney. *See Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; Fed.R.Civ.P. 56(e). Here, Murphy relied on counsel's proffer at the hearing, which is insufficient to meet his burden, and did not present any evidence at the hearing to support the assertion that he intended for Hackney's legal advice regarding grounds rents to create an attorney-client relationship.[9]

In sum, the court finds that Murphy has failed to produce sufficient evidence that

---

7. In his complaint against Hackney, Murphy did allege that while acting as a lawyer for the Estate, Hackney formed an attorney-client relationship with Murphy because Murphy, Hackney and Mrs. Murphy specifically intended that Murphy would be the third party beneficiary of Hackney's legal services to the Estate. (Paper No. 12; Exh. A ¶ 28).

8. Murphy speculated at the hearing that any loss resulting from Hackney's legal advice regarding the ground rents would be a very small amount, under $5,000.00.

9. At the hearing, Murphy did not point to Hackney's deposition testimony as evidence that Murphy intended to create an attorney-client relationship with Hackney by seeking legal advice. Because this deposition re-

he had standing to sue Hackney as primary beneficiary of the Estate either because of a direct employment relationship with Hackney or because he was the intended third party beneficiary of Hackney's legal services. Therefore, as a matter of law, the settlement proceeds could have resulted only from Murphy's claims on behalf of the Estate in his capacity as co-personal representative. As a result, the settlement proceeds constitute Estate property to which the United States has a superior claim because of its tax lien.[10] Accordingly, summary judgment for the United States is appropriate.

## IV. *Conclusion*

For the foregoing reasons, defendant United States' Motion for Summary Judgment is granted. A separate order shall issue.

mains the only evidence in the record, the court has considered whether that testimony, read in the light most favorable to Murphy, is evidence of Murphy's intent at the time he consulted Hackney. Hackney's testimony makes clear that any legal services provided to Murphy "individually" were provided in connection with Murphy's responsibilities in administering the Estate as co-personal representative, not as primary beneficiary, and in no way reflects Murphy's intent when he consulted Hackney. (Paper No. 16; Exh. A at 19–20).

10. In his opposition, Murphy argued that the settlement proceeds are not Estate property because the Estate closed prior to the assessment. He offered no law to support this position and at the hearing abandoned the argument.